No. 11-17879

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

CANDYCE MARTIN 1999 IRREVOCABLE TRUST, *A Partner Other Than the Tax Matters Partner*; CONSTANCE GOODYEAR 1997 IRREVOCABLE TRUST, *A Partner Other than the Tax Matters Partner*, Appellants,

v.

UNITED STATES OF AMERICA, Appellee

---

On Appeal from the United States District Court for the
Northern District of California

---

### APPELLANTS' OPENING BRIEF

---

MICHAEL J. DESMOND
Law Offices of Michael J. Desmond, APC
233 E. Carrillo Street, Suite A
Santa Barbara, CA  93101-7162
Telephone:  (805) 618-1862
Facsimile:  (805) 617-0291
michael@desmondtaxlaw.com

RONALD L. BUCH, JR.
SAUL MEZEI
Bingham McCutchen LLP
2020 K Street, NW
Washington, DC  20006-1806
Telephone:  (202) 373-6000

*Attorneys for Appellants*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellants make the following disclosure:

(1) Appellants are trusts, not corporations.

(2) Appellants have no corporate parent(s).

(3) No publicly held corporation owns a 10% or greater interest in Appellants.

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION..................................................................1

STATEMENT OF ISSUE PRESENTED FOR REVIEW .......................................1

STATEMENT REGARDING ADDENDUM TO BRIEF ......................................2

STATEMENT OF THE CASE.......................................................................2

STATEMENT OF FACTS ............................................................................5

SUMMARY OF ARGUMENT .......................................................................11

STANDARD OF REVIEW ...........................................................................15

ARGUMENT ............................................................................................15

    I.      UNDER THE PLAIN LANGUAGE OF THE FORMS 872-I
          AND APPLICABLE RULES OF CONSTRUCTION, THE
          ASSESSMENT LIMITATIONS PERIOD WAS NOT
          EXTENDED FOR "PARTNERSHIP ITEMS" OF THE 2000-A
          PARTNERSHIP ...............................................................................15

          A.     The Restricted Consent Agreements Do Not Extend to
                Cover Partnership Items of an Entity Mentioned
                Nowhere in Those Agreements...............................................18

          B.     The TEFRA Regime and Rules of Contract Construction
                Compel the Conclusion that the Restricted Consent
                Agreements were Limited to Partnership Items of the
                First Ship Partnership...........................................................22

               1.     The term "partnership item" is at the core of the
                      TEFRA regime and the term must be construed
                      according to its well-defined legal meaning.................22

               2.     Principles of contract construction require that the
                      term "partnership flow-through items" be
                      construed consistent with the well-established
                      definition of "partnership items" ..................................26

II.    THE DISTRICT COURT'S ERRONEOUS
       INTERPRETATION OF THE RESTRICTED CONSENTS IS
       DEMONSTRATED BY THE FACT THAT ITS FINAL
       DECISION DIRECTLY CONFLICTS WITH ITS RULING
       ON THE ASSESSMENT LIMITATIONS PERIOD .......................29

III.   THE DISTRICT COURT MISINTERPRETED AND
       MISAPPLIED A PRE-TEFRA TAX COURT
       MEMORANDUM OPINION ..........................................................32

       A.    The District Court Misread the Facts and Holding of
             *Brody* ........................................................................................32

       B.    The District Court's Misreading of *Brody* Caused it to
             Render a Decision that Conflicts with TEFRA's Entity-
             Level Approach to Partnership Audits by Failing to
             Recognize the Lower-Tier 2000-A Partnership and the
             First Ship Partnership as Separate Juridical Entities with
             Their Own Separate and Distinct Partnership Items................34

       C.    The Court of Federal Claims' Recent Opinion in *Russian
             Recovery Fund* Reflects the Legally Correct Analysis of
             an Extension Agreement Under the TEFRA Regime.............37

CONCLUSION ........................................................................................40

STATEMENT OF RELATED CASES ..................................................41

CERTIFICATE OF COMPLIANCE......................................................41

CERTIFICATE OF SERVICE

ADDENDUM TO APPELLANTS' OPENING BRIEF

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*AD Global Fund, LLC v. United States*, 481 F.3d 1351 (Fed. Cir. 2007)...............16

*Arizona v. United States*, 575 F.2d 855 (1978)........................................................27

*Brody v. Comm'r*, 55 T.C.M. (CCH) 808 (1988) ........................................32, 33, 34

*In re Crowell*, 305 F.3d 474 (6th Cir. 2002)............................................................35

*Curr-Spec Partners, L.P. v. Comm'r*, 579 F.3d 391 (5th Cir. 2009)......................16

*Dart Advantage Warehousing, Inc. v. United States*,
     52 Fed. Cl. 694 (2002) ........................................................................24

*Fidelity Int'l Currency Advisor A Fund, LLC, v. United States*,
     661 F.3d 667 (1st Cir. 2011).................................................................20

*Greenwood v. Stevenson*, 88 F.R.D. 225 (D.R.I. 1980)....................................25, 27

*Heritage Org., LLC v. Comm'r*, 102 T.C.M. (CCH) 392 (2011) ...........................20

*Holof v. Comm'r*, 872 F.2d 50 (3d Cir. 1989*)* ........................................................19

*Julius Goldman's Egg City v. United States*, 697 F.2d 1051 (Fed. Cir. 1983)........27

*Kelly v. Comm'r*, 45 F.3d 348 (9th Cir. 1995).........................................................19

*Longiotti v. United States*, 819 F.2d 65 (4th Cir. 1987) ..........................................14

*Monahan v. Comm'r*, 321 F.3d 1063 (11th Cir. 2003)............................................23

*Peterson v. Minidoka County School District No. 331*, 118 F.3d 1351
     (9th Cir. 1997)*, amended,* 132 F.3d 1258 (9th Cir. 1997).................26

*Rockwell v. Comm'r*, 512 F.2d 882 (9th Cir. 1975) .................................................14

*Roszkos v. Comm'r*, 850 F.2d 514 (9th Cir. 1988) ............................................15, 19

**Cases (cont.)**                                                        **Page(s)**

*Russian Recovery Fund Ltd. v. United States*,
   101 Fed. Cl. 498 (2011) .........................................................37, 38, 39

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008) ................................24

*Stange v. United States*, 282 U.S. 270 (1931).........................................................19

*Unicon Mgmt. Corp. v. United States*, 375 F.2d 804 (1967)...................................28

*United Food Servs., Inc. v. United States*, 19 Cl. Ct. 539 (1990)...........................27

*United States v. Brockamp*, 519 U.S. 347 (1997) ...................................................14

**Statutes**

I.R.C. § 702(d) ........................................................................................................23

I.R.C. § 731(a)(2) ......................................................................................................8

I.R.C. § 1361 ...........................................................................................................25

I.R.C. § 6221-6234...................................................................................................12

I.R.C. § 6221 ......................................................................................................23, 35

I.R.C. § 6222(a) .......................................................................................................23

I.R.C. § 6223 ............................................................................................................36

I.R.C. § 6223(a) .......................................................................................................23

I.R.C. § 6223(a)(2) ....................................................................................................3

I.R.C. § 6224(a).......................................................................................................23

I.R.C. § 6225(a)........................................................................................................23

I.R.C. § 6226 ...........................................................................................................23

**Statutes (cont.)**                                             **Page(s)**

I.R.C. § 6226(b) ...................................................................................1

I.R.C. § 6226(g) ...................................................................................1

I.R.C. § 6227 .....................................................................................23

I.R.C. § 6228 .....................................................................................23

I.R.C. § 6229 .........................................................................16, 23, 36

I.R.C. § 6229(a) ..............................................................................8, 15

I.R.C. § 6229(b) .................................................................................16

I.R.C. § 6229(b)(1)(A) .......................................................................13

I.R.C. § 6229(b)(1)(B) .......................................................................13

I.R.C. § 6229(b)(3)......................................................13, 17, 18, 21

I.R.C. § 6231(a)(3)......................................................20, 22, 23, 28

I.R.C. § 6231(a)(5) .............................................................................16

I.R.C. § 6231(a)(7)..........................................................................3, 16

I.R.C. § 6501 .....................................................................................16

I.R.C. § 6501(a)........................................................................8, 15, 16

I.R.C. § 6501(c)(4) .............................................................................16

I.R.C. § 6511(h) .................................................................................14

I.R.C. § 6662(h) .................................................................................11

28 U.S.C. § 1291 ................................................................................1

**Statutes (cont.)**      **Page(s)**

28 U.S.C. § 1346(a)(2)........................................................................24

28 U.S.C. § 1346(e) ..............................................................................1

28 U.S.C. § 1491(a) ............................................................................24

**Treasury Regulations**

Treas. Reg. § 1.671-3 .........................................................................25

Treas. Reg. § 301.7701-3(b) ................................................................7

Treas. Reg. § 301.6231(a)(3)-1(a)(4)(i).........................................10, 20

Treas. Reg. § 301.6231(a)(3)-1(c)(2)..............................................10, 20

Treas. Reg. §§ 301.6221-1 through 301.6233-1 ................................12

**IRS Administrative Materials**

IRS Notice 2000-44, 2000-2 C.B. 255................................................13

Rev. Rul. 2004-88, 2004-2 C.B. 165 ..................................................35

I.R.M. § 25.6.22.6.5.1 (Aug. 1, 2003) .................................................18

I.R.M. § 25.6.22.8.6 (Jan. 1, 2002) .......................................................8

I.R.M. § 25.6.22.8.15 (Aug. 1, 2003) ............................................17, 18

**Legislative Materials**

Pub. L. No. 97-248, 96 Stat. 324 (1982)........................................11, 12

**Miscellaneous**

Restatement (Second) of Contracts § 202(3).......................................25

## STATEMENT OF JURISDICTION

The District Court possessed jurisdiction over these consolidated cases pursuant to Internal Revenue Code (26 U.S.C.) § 6226(b)[1] and 28 U.S.C. § 1346(e).  Final Judgment and an Order Denying Petition and Entering Findings of Fact and Conclusions of Law were entered by the District Court on October 6, 2011, disposing of all parties' claims.  Excerpts of Record ("ER") 001; ER 002-078.  A Notice of Appeal of All Petitioners was timely filed on November 30, 2011.  ER 092-093.  This Court possesses jurisdiction under Code section 6226(g) and 28 U.S.C. § 1291.

## STATEMENT OF ISSUE PRESENTED FOR REVIEW

Whether, as a matter of law, written agreements holding open the time period during which the Internal Revenue Service ("IRS") can assess tax attributable to "partnership flow-through items" of an upper-tier partnership named in the agreements also hold open the time period during which the IRS can assess tax attributable to "partnership items" of a lower-tier partnership not named in the agreements.

---

[1] Except as otherwise provided, "I.R.C." or "Code" references are to the Internal Revenue Code of 1986, as amended, in effect for the year at issue.  "Treas. Reg." references are to the Treasury Regulations (26 C.F.R.) in effect for the year at issue.

## STATEMENT REGARDING ADDENDUM TO BRIEF

In accordance with Ninth Circuit Rule 28-2.7, the pertinent authorities are located in a separate Addendum to Appellants' Opening Brief.

## STATEMENT OF THE CASE

This case involves a dispute over federal income taxes arising from a transaction involving a "tiered" partnership structure, *i.e.*, a partnership that owned an interest in another partnership.  The transaction took place in 2000.  ER 006-033.  The IRS began an audit of the transaction in 2004.  ER 037; ER 237.  During the audit, the IRS requested and received from the ultimate partners in the transaction a series of IRS Forms 872-I[2] that extended by agreement the normal three-year period in which it could assess additional tax.  ER 140-163.  In "restricted consent" language that limits their scope, the Form 872-I extension agreements reference only First Ship LLC (the "First Ship Partnership").  ER 141; ER 143; ER 145; ER 147; ER 149; ER 151; ER 153; ER 155; ER 157; ER 159; ER 161; ER 163; ER 237.  The IRS drafted and sent, but failed to pursue, a Form 872-P[3] extension agreement for First Ship 2000-A LLC (the "2000-A

---

[2] IRS Form 872-I is titled "Consent to Extend the Time to Assess Tax As Well As Tax Attributable Items of a Partnership" and is signed by individual partners in a partnership to extend their separate assessment limitations period to a fixed date.

[3] IRS Form 872-P is titled "Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership," but is signed by the tax matters partner of the

Partnership"), a separate, lower-tier entity. ER 118-119. The Form 872-P extension agreement was never executed.

On June 19, 2008, the IRS concluded its audit with the issuance of Notices of Final Partnership Administrative Adjustment ("FPAA") pursuant to Code section 6223(a)(2). ER 038; ER 238. For the 2000 tax year, an FPAA was issued only to the lower-tier 2000-A Partnership, which was not referenced in the Form 872-I extension agreements and did not sign the Form 872-P extension agreement. ER 130-139. For the later 2001 tax year, an FPAA was issued only to the upper-tier First Ship Partnership. ER 120-129. This appeal does not challenge the determinations made by the IRS in the 2001 FPAA issued to the First Ship Partnership.

On November 12, 2008, Appellants—two of the ultimate partners in the transaction ("Taxpayers")—filed separate petitions in the United States District Court for the Northern District of California challenging the determinations made in the FPAAs issued to the 2000-A Partnership (for the 2000 tax year) and the First Ship Partnership (for the 2001 tax year). ER 261-286; ER 287-305. On May 22, 2009, the District Court consolidated the cases for all purposes. ER 252-254.

---

partnership (as defined by I.R.C. § 6231(a)(7)) and extends the assessment limitations period for all partners with respect to "partnership items" of the partnership.

On November 4, 2009, Taxpayers filed a motion for partial summary judgment asserting that the time period in which the IRS could assess additional tax arising from the audit determinations set forth in the FPAA issued to the lower-tier 2000-A Partnership for the 2000 tax year had expired because the Form 872-I extension agreements applied only to the upper-tier First Ship Partnership.  ER 239-251.  In an order issued on December 11, 2009, the District Court denied Taxpayers' motion for partial summary judgment.  ER 084-091.  On February 11, 2010, the District Court denied Taxpayers' motion for certification of that order for interlocutory appeal to this Court.  ER 083.

On December 7, 2010, Taxpayers propounded discovery relating to the scope of the Form 872-I extension agreements.  ER 104.  After the United States objected to that discovery, Taxpayers filed a motion to compel.  ER 097-107.  A magistrate judge denied Taxpayers' motion in an April 13, 2011 minute order.  ER 082.  Taxpayers then sought, ER 094-096, and were denied relief from the magistrate judge's order, ER 081.  In a Final Pretrial Order dated July 8, 2011, the District Court stated that it had "determined, as a matter of law, that the parties' agreements to extend the statutory assessment period encompassed both" the lower-tier 2000-A Partnership and the upper-tier First Ship Partnership and that the assessment of additional tax arising from the FPAA issued to the lower-tier 2000-A Partnership for 2000 was not time-barred.  ER 079-080.

4

A trial of the case on the merits was held in August 2011.  ER 002.  On October 6, 2011, the District Court entered an Order Denying Petition and Entering Findings of Fact and Conclusions of Law and entered a final Judgment resolving all claims by all parties in the consolidated cases.  ER 001; ER 002-078.  This appeal followed.

## STATEMENT OF FACTS

The sole issue on appeal is the scope of the agreements to extend the assessment period of limitations, which turns on the plain meaning of the Form 872-I extension agreements.  Accordingly, the facts of the underlying transaction are of little import except for one key undisputed fact:  The IRS's 2000 FPAA adjustment is to a contribution of assets and liabilities to the lower-tier 2000-A Partnership.  ER 137-138.

The transaction at issue arose in connection with a decision by the Chronicle Publishing Company ("Chronicle Publishing") in 1999 to sell its assets.  ER 007.  In 1999, descendants of the co-founder of Chronicle Publishing, including Consuelo Tobin Martin and her children, owned outright or through family trusts (the "Martin family trusts"),[4] 16.67 percent of the then-outstanding shares of

_____

[4] The 14 Martin family trusts are identified as partners in the First Ship Partnership on the IRS Form 1065 tax return filed by that partnership for the 2000 tax year. ER 173-229.  The 14 Martin family trusts include five taxable trusts established by

5

Chronicle Publishing's stock. ER 004. At the time, Chronicle Publishing—organized as a Subchapter S corporation—owned several operating media businesses. ER 004. By 1999, deteriorating relations among the owners of Chronicle Publishing made continued family control and operation of the business impractical, and a decision was made to proceed with a sale of the company's assets. ER 007.

Given the size of the transaction, the parties to the Chronicle Publishing asset sale, including the Martin family trusts, sought professional advice on how to structure the transaction in a manner that would address myriad legal, investment, and tax considerations. ER 012-022. Based on advice received, the Martin family trusts created a tiered partnership structure to implement the transaction in a tax-efficient manner while also achieving other business and investment objectives, including protecting against the risk that Chronicle Publishing might be subject to significant entity-level tax liabilities if its status as a Subchapter S corporation was revoked. ER 010; ER 022-023.

---

Consuelo T. Martin in 1988 (the "Five 1988 Martin Family Taxable Trusts"), five grantor trusts established by Consuelo T. Martin in 1999 (the "Five Martin Family Grantor Trusts"), and four irrevocable trusts (the "Four Martin Family Irrevocable Trusts"), two established by Francis A. Martin III (in 1997 and 1998), and two that are the Appellants in this case, one established by Constance M. Goodyear in 1997 and the other established by Candyce Martin in 1999. ER 004-005; ER 235.

The tiered partnership structure had three relevant parts:

(1) The 14 Martin family trusts;

(2) Several upper-tier partnerships, including the First Ship Partnership and

     Fourth Ship LLC; and

(3) A single, lower-tier partnership, the 2000-A Partnership.

ER 007; ER 022-023.  The upper-tier partnerships and the single lower-tier

partnership were organized as limited liability companies under state law, but are

treated as partnerships for federal income tax purposes. [5]

Upon the sale and distribution of Chronicle Publishing's assets, the Martin

family trusts contributed certain of those and other assets and liabilities to the First

Ship Partnership.  ER 029.  The lower-tier 2000-A Partnership was separately

funded with contributions of assets and liabilities from the First Ship Partnership

(its majority partner) and from its two minority partners, Fourth Ship LLC and

LMGA Holdings, Inc. ("LMGA"), a pre-existing Subchapter S corporation.  ER

006; ER 030.

Near the end of 2000, the 2000-A Partnership sold all of its assets.  ER 030-

031.  Proceeds from that sale were distributed to the three partners of the 2000-A

---

[5] *See* Treas. Reg. § 301.7701-3(b) (absent an election to be treated as a corporation, a limited liability company with more than one member is classified as a partnership for federal income tax purposes).

Partnership in proportion to and in complete liquidation of their partnership interests.  ER 032.  The liquidation was a taxable event for each of the three partners, with the resulting gain or loss being measured (and reported to the IRS) by reference to the difference between each partner's tax basis in its interest in the 2000-A Partnership and the money distributed to each partner in connection with the liquidation.  I.R.C. § 731(a)(2).

In February 2004, the IRS began an audit of the tiered partnership structure. Because the normal three-year assessment limitations period under Code sections 6229(a) and 6501(a) was about to expire, one of the first steps the IRS took in the audit was to request various extensions of the assessment limitations period.  ER 37; ER 084; ER 100.  The partners' representative and the IRS negotiated IRS Form 872-I extension agreements.  ER 140-163.  Those agreements, which initially extended the limitations period to April 15, 2005, contained "restricted consent"[6] language that expressly limited their scope to:

> The amount of any deficiency assessment is to be limited to that resulting from any adjustment directly or indirectly (through one or more intermediate entities) attributable to partnership flow-through

---

[6] A restricted consent is a waiver of the limitations period only with respect to specified issues, which permits the period to run its normal course on all unspecified issues.  Under IRS procedures, the IRS is responsible for preparing the restricted consent language and IRS Area Counsel must review it.  *See* Internal Revenue Manual ("I.R.M.") § 25.6.22.8.6 (Jan. 1, 2002).

items of First Ship LLC . . . .

ER 037; ER 088; ER 141, ER 143; ER 145; ER 147; ER 149; ER 151; ER 153; ER

155; ER 157; ER 159; ER 161; ER 163; ER 237.[7]  The restricted consent language

specifically identified the First Ship Partnership, but made no reference whatsoever

to the lower-tier 2000-A Partnership.  Successive Forms 872-I using identical

restricted consent language further extended the limitations period.  ER 037; ER

88; ER 237.

Around the same time that the IRS requested from the partners of the First

Ship Partnership and negotiated the Form 872-I extension agreements, it also

requested from LMGA, the tax matters partner of the lower-tier 2000-A

Partnership, a Form 872-P[8] extension agreement.  ER 118-119.  That agreement

would have covered all "partnership items" of the 2000-A Partnership, including

the contributions of assets and liabilities that were made to the 2000-A Partnership

by the First Ship Partnership.  The IRS failed to follow through on its request for

the Form 872-P covering partnership items of the 2000-A Partnership and no such

_____

[7] The United States conceded, and the District Court found, that the adjustments at issue are not indirect adjustments because the Martin family trusts held a direct interest in the First Ship Partnership.  ER 088-089.

[8] The Form 872-P was sent to the tax matters partner of the 2000-A Partnership on March 17, 2004, ER 118-119, less than one month after the IRS requested the Forms 872-I.

form was ever executed.

On June 19, 2008, the IRS issued its FPAA to the lower-tier 2000-A Partnership adjusting various "partnership items" of that entity, including a deduction for professional fees, the reporting of investment income and loss, and the reporting of distributions of money. ER 130-139. Most significantly, the FPAA adjusted, as a "partnership item" of the lower-tier 2000-A Partnership, the contribution of assets and liabilities made to the 2000-A Partnership by the First Ship Partnership.[9] This adjustment had the effect of eliminating most of the $321 million short-term capital loss reported on the income tax return filed by the First Ship Partnership for the 2000 tax year. ER 035-036; ER 137-138; ER 166; ER 168.[10] After trial, the District Court sustained the adjustments set forth in the

---

[9] Notwithstanding the fact that the short-term capital loss arising from the transaction was reported on the First Ship Partnership's IRS Form 1065 income tax return, it is undisputed that the adjustments made by the IRS in the FPAA issued to the 2000-A Partnership are adjustments to "partnership items" of the 2000-A Partnership under applicable IRS regulations. *See* Treas. Reg. § 301.6231(a)(3)-1(a)(4)(i), -1(c)(2) (contributions of property to a partnership generally defined as partnership items of the receiving partnership).

[10] On June 19, 2008, the IRS separately issued to the tax matters partner of the First Ship Partnership an FPAA making adjustments to the Form 1065 tax return filed by the First Ship Partnership for the later 2001 tax year, including adjustments relating to certain deductions reported on that return for professional fees and similar items. ER 120-129. This appeal does not challenge the adjustments made in that separate FPAA.

FPAA issued to the 2000-A Partnership, except with respect to the assertion of a 40 percent gross valuation misstatement penalty under Code section 6662(h). ER 066-067; ER 078.

## SUMMARY OF ARGUMENT

The District Court held that, even though the Form 872-I extension agreements did not mention the lower-tier 2000-A Partnership, the FPAA issued to that partnership was within the scope of those agreements because it "involv[ed] an adjustment directly attributable to *flow-through items* of" the First Ship Partnership. ER 088-090 (emphasis added). The District Court was mistaken: "partnership items" of the lower-tier 2000-A Partnership (the subject of the FPAA) are not the same as "partnership flow-through items" of the First Ship Partnership (the subject of the Form 872-I extension agreements).

The District Court's characterization of the FPAA fails to recognize that the FPAA actually included multiple adjustments to "partnership items" of the 2000-A Partnership and indeed it completely overlooks the critical word "*partnership*." Moreover, the District Court's decision does not discuss the established legal definition of "partnership item," consider the fundamental importance of that term in the TEFRA procedural regime,[11] or acknowledge the fact that the FPAA is, by

---

[11] TEFRA is an acronym for the Tax Equity and Fiscal Responsibility Act of 1982,

definition, limited to the adjustment of "partnership items" of the lower-tier 2000-A Partnership. Only by ignoring the operative term "partnership item" was the District Court able to broadly construe the Form 872-I extension agreements to cover the adjustments set forth in the FPAA issued to the lower-tier 2000-A Partnership, notwithstanding the fact that the agreements make no reference whatsoever to that entity.

The Code sets forth specific rules on how to extend the period of limitations for tax attributable to partnership items, none of which were followed here for partnership items of the 2000-A Partnership. Under the Code, the IRS could have obtained an extension of the period of limitations in the following three ways :

---

Pub. L. No. 97-248, 96 Stat. 324 (1982). The partnership audit and litigation procedures enacted by TEFRA consist of thirteen intertwined Code sections and numerous accompanying Treasury regulations, the application of which hinge on whether a "partnership item" is at issue. I.R.C. §§ 6221-6234; Treas. Reg. §§ 301.6221-1 through 301.6233-1.

| IRS Options for an Extension Agreement to Cover the FPAA Issued to the 2000-A Partnership | |
|---|---|
| Obtain a Form 872-P signed by the tax matters partner of the 2000-A Partnership | I.R.C. § 6229(b)(1)(B), (b)(3) |
| Obtain Forms 872-I expressly providing that they apply to all "partnership items," *without limitation to a named partnership* | I.R.C. § 6229(b)(1)(A), (b)(3) |
| Obtain Forms 872-I expressly providing that they apply to "partnership items" of the 2000-A partnership | I.R.C. § 6229(b)(1)(A) |

The IRS chose none of those options. Instead, it obtained Forms 872-I expressly providing that they apply only to "partnership flow-through items" of the First Ship Partnership.

In defending the District Court's ruling, the IRS will undoubtedly assert that it identified relevant aspects of the underlying transaction, including the First Ship Partnership's contributions of assets and liabilities to the 2000-A Partnership, as a "reportable," "Son of Boss" transaction in IRS Notice 2000-44, 2000-2 C.B. 255. But that pejorative characterization has no bearing on resolution of this appeal, for by definition, statutes of limitation act to cut off meritorious claims; it makes no difference that the IRS is the holder of those claims or how the IRS has

characterized them.[12]  *See Longiotti v. United States*, 819 F.2d 65, 68 (4th Cir. 1987) ("Statutes of limitations 'are an indispensable part of practical tax administration' which may of necessity bar taxpayers from claiming refunds and the government from collecting revenue.") (quoting *Olin Mathieson Chem. Corp. v. United States*, 265 F.2d 293, 296 (7th Cir. 1959)).  Adherence to the assessment limitations period in tax cases is particularly important as the taxpayer generally bears both the burden of production and the ultimate burden of persuasion.  *See Rockwell v. Comm'r*, 512 F.2d 882, 885 (9th Cir. 1975).

The District Court's ruling denying Taxpayers' motion for summary judgment on the assessment limitations period issue is inconsistent with the structure and plain language of the Form 872-I extension agreements, violates applicable principles of construction, and erroneously relies on a pre-TEFRA Tax Court memorandum opinion that did not involve the defined legal term "partnership item."  Properly construing the term "partnership flow-through items"

---

[12] Where taxpayers miss the statutory deadline for requesting a refund, the IRS has forcefully argued—and the Supreme Court has agreed—that that is the end of the inquiry.  Unless Congress provides otherwise, equitable considerations including the merits of the underlying claim have no bearing on the applicable limitations period in tax cases.  *See United States v. Brockamp*, 519 U.S. 347, 353 (1997) ("Congress would likely have wanted to decide explicitly whether, or just where and when, to expand the statute's limitations periods, rather than delegate to the courts a generalized power to do so wherever a court concludes that equity so requires."), superseded in part by statute, I.R.C. § 6511(h).

in the context of the well-settled definition of "partnership item," the period of time in which the IRS can assess tax arising from the adjustments set forth in the FPAA issued to the lower-tier 2000-A Partnership has expired.

## STANDARD OF REVIEW

The District Court held as a matter of law that the "plain language" of the Form 872-I extension agreements holding open the period of limitations for the First Ship Partnership was sufficient to also hold open the period of limitations for the lower-tier 2000-A Partnership. ER 089-090. That decision is subject to de novo review. *Roszkos v. Comm'r*, 850 F.2d 514, 516 (9th Cir. 1988).

## ARGUMENT

## I. UNDER THE PLAIN LANGUAGE OF THE FORMS 872-I AND APPLICABLE RULES OF CONSTRUCTION, THE ASSESSMENT LIMITATIONS PERIOD WAS NOT EXTENDED FOR "PARTNERSHIP ITEMS" OF THE 2000-A PARTNERSHIP

Subject to certain enumerated statutory exceptions, the IRS must assess additional tax due from any taxpayer within three years of the filing of a tax return. I.R.C. §§ 6229(a), 6501(a). Recognizing the unique nature of partnership audits, where adjustments to the partnership's return may affect multiple individual partners, Congress provided the IRS with two paired statutes that govern the assessment limitations period for tax attributable to "partnership items":[13] (1) the

---

[13] The same statutes also apply to the IRS's assessment of tax attributable to an "affected item," a statutorily defined term covering partner-specific items impacted

general period under Code section 6501(a) for assessing tax against individual

partners, and (2) an additional, minimum period under Code section 6229 for

assessing tax attributable to partnership items against all partners.  *See, e.g., Curr-*

*Spec Partners, L.P. v. Comm'r*, 579 F.3d 391, 396 (5th Cir. 2009); *AD Global*

*Fund, LLC v. United States*, 481 F.3d 1351, 1354-55 (Fed. Cir. 2007).  As with all

aspects of TEFRA, the lynchpin for determining the applicable limitations period

is whether the adjustment giving rise to additional tax involves a "partnership

item."  Because TEFRA requires the IRS to recognize each partnership as a

separate juridical entity, in the tiered partnership context, it is also critical to

determine the partnership whose "partnership items" are being adjusted.

Code sections 6229 and 6501 both contain provisions that extend the normal

three-year limitations period under specified circumstances.  The only exception

relevant here is in Code sections 6229(b) and 6501(c)(4).  Those statutes provide

that the general three-year period from the filing of the tax return can be extended

by written agreement between the IRS and the tax matters partner of the

partnership acting on behalf of all partners, or by written agreements entered into

between the IRS and each individual partner of the partnership.[14]  If an extension

by the IRS's entity-level adjustment of partnership items.  I.R.C. § 6231(a)(5).

[14] Code section 6231(a)(7) and its implementing regulations define the tax matters

16

agreement is entered into between the IRS and each individual partner, Code section 6229(b)(3) mandates that it "expressly provide[] that such agreement applies to tax attributable to partnership items."[15]

Under this framework, in order to extend by agreement the assessment limitations period for additional tax attributable to "partnership items" of the lower-tier 2000-A Partnership, the IRS's own procedural manual in effect in 2004 (when the extension agreements were negotiated) outlined two options for the IRS:

(1) Obtain a single extension agreement (Form 872-P) from the tax matters partner of the lower-tier 2000-A Partnership that would bind all of the direct and indirect partners of the 2000-A Partnership; or

(2) "If a consent agreement cannot be obtained from the Tax Matters Partner," obtain an extension agreement (Form 872-I) from each ultimate

---

partner as the individual or entity with authority to take specified actions relevant to the TEFRA audit and litigation procedures on behalf of the partnership.

[15] When the restricted consent limits the extension to partnership items of a specific partnership, the IRS's guidelines require that that partnership be specifically identified, which is exactly what the Forms 872-I did here in referencing only the First Ship Partnership. *See* I.R.M. § 25.6.22.8.15, Example 9 (Aug. 1, 2003) (providing restricted consent language for use when extending the time to assess tax attributable to items of a TEFRA partnership). Yet the IRS's argument here rests on disavowing its own guidelines and taking the position that the Form 872-I extension agreements somehow cover partnership items of the lower-tier 2000-A Partnership, an entity referenced nowhere in those agreements.

17

partner that "expressly provides" that it applies to partnership items of all partnerships in which that partner has an interest or of specifically identified partnerships.

I.R.M. § 25.6.22.6.5.1 (Aug. 1, 2003); *see also* I.R.M. § 25.6.22.8.15, Example 9 (Aug. 1, 2003) (providing restricted consent language for use when extending the time to assess tax attributable to items of a TEFRA partnership).

In February 2004, the IRS sought (and shortly thereafter obtained) from each individual partner of the First Ship Partnership the Forms 872-I at issue here, naming only the upper-tier First Ship Partnership. ER 140-163. The IRS never requested Forms 872-I naming the lower-tier 2000-A Partnership. Within a month of requesting the Forms 872-I from each of the individual partners of the First Ship Partnership, the IRS drafted and sent a single Form 872-P to the tax matters partner for the 2000-A Partnership that would have covered the adjustments at issue. ER 118-119. The IRS failed to pursue the Form 872-P and that form was never executed.

### A. The Restricted Consent Agreements Do Not Extend to Cover Partnership Items of an Entity Mentioned Nowhere in Those Agreements

A Form 872-I extension agreement that "expressly provides" under Code section 6229(b)(3) that it covers partnership items can be limited to a specifically identified partnership (or partnerships) by "restricted consent" language. When

this is done, the limitations period will expire in the normal course for partnership items of partnerships that are not included within the scope of the restricted consent.  The question here is whether restricted consent language that covers only "partnership flow-through items of First Ship LLC" should, as the District Court held, be construed expansively to include partnership items of the lower-tier 2000-A Partnership.

Restricted consents are technically unilateral waivers of the assessment limitations period by the taxpayer, rather than tolling agreements with the IRS. *See, e.g.*, *Holof v. Comm'r*, 872 F.2d 50, 52 (3d Cir. 1989*); see also Stange v. United States*, 282 U.S. 270, 276 (1931) (stating that a waiver of the limitations period is not a contract but a "voluntary, unilateral waiver of a defense by the taxpayer").  Courts nonetheless apply general contract principles in interpreting them.  *See Roszkos*, 850 F.2d at 516 ("Interpretation of [Form 872] waiver agreements is subject to the rules governing interpretation of contracts . . . ."); *see also Kelly v. Comm'r*, 45 F.3d 348, 350 n.4 (9th Cir. 1995) ("[C]ontract principles are significant because 26 U.S.C. § 6501(c)(4) requires that the parties reach a written agreement as to the extension.  The term agreement means a manifestation of mutual assent.") (citation omitted).

This case involves adjustments to "partnership items" of the lower-tier 2000-A Partnership for the 2000 tax year, including but not limited to adjustments

to the contributions of assets and liabilities made by its majority partner, the First

Ship Partnership.  The adjustment to these contributions is, under applicable IRS

regulations, purely an adjustment to a "partnership item" of the 2000-A

Partnership.[16]  Treas. Reg. § 301.6231(a)(3)-1(a)(4)(i), -1(c)(2); *see also Fidelity*

*Int'l Currency Advisor A Fund, LLC, v. United States*, 661 F.3d 667, 671 n.3 (1st

Cir. 2011) (noting that IRS regulations state that contributions to a partnership are

partnership items of the receiving partnership); *Heritage Org., LLC v. Comm'r*,

102 T.C.M. (CCH) 392, 397 (2011) ("Partnership items also include the amount of

contributions to and distributions from the partnership, including any associated

liabilities.").

   Notwithstanding the undisputed fact that the IRS's adjustment to the

contributions is an adjustment to a partnership item of the lower-tier 2000-A

Partnership, the District Court determined that the Form 872-I extension

agreements, which make no reference to the 2000-A Partnership, cover not only

_____

[16] That the contributions were reported on a return filed by the First Ship
Partnership notwithstanding the fact that they are partnership items of the 2000-A
Partnership, *see* ER 168, is consistent with the statutory mandate to consolidate
consideration of items at the "appropriate[]" entity level.  I.R.C. § 6231(a)(3).  The
IRS has, by regulation, determined that for the contributions at issue here the
"appropriate[]" level is the 2000-A Partnership, a determination that it now seeks
to avoid in broadly construing the Form 872-I extension agreements that reference
only the First Ship Partnership.

the adjustment to the contributions, but also all other adjustments made by the IRS to partnership items of the 2000-A Partnership.[17]  That determination is in error.

The Form 872-I extension agreements do three things:

*First*, in Paragraph (1) the agreements generally extend the three-year assessment limitations period for each individual partner;

*Second*, under the statutory mandate of Code section 6229(b)(3), in Paragraph (2) the agreements "expressly provide[]" that they extend to the adjustment of "partnership items" of all partnerships in which each individual partner has an interest; and

*Third*, by use of the restricted consent language included as an attachment to each Form 872-I, the agreements limit the scope of the Code section 6229(b)(3) "partnership item[]" extension in Paragraph (2) to "partnership flow-through items of *First Ship LLC*."

ER 141; ER 143; ER 145; ER 147; ER 149; ER 151; ER 153; ER 155; ER 157; ER 159; ER 161; ER 163; ER 237 (emphasis added).

The restricted consent language states unambiguously that it *limits* the scope

_____

[17] As discussed in part II, *infra* pp. 29-32, the District Court's decision sustained the IRS's substantive adjustments in their entirety, including adjustments that are allocated to the minority partners in the 2000-A Partnership and that are not connected to the contributions made by the First Ship Partnership.

of the Form 872-I extension agreements, as that scope is otherwise defined by

Paragraphs (1) and (2).  ER 141; ER 143; ER 145; ER 147; ER 149; ER 151; ER

153; ER 155; ER 157; ER 159; ER 161; ER 163 ("The amount of any deficiency

assessment *is to be limited* . . . .") (Emphasis added).  The restricted consent

language cannot, therefore, be broader in scope than Paragraphs (1) and (2) of the

agreements, but must be read to limit and modify Paragraphs (1) and (2).  In other

words, by referencing the First Ship Partnership, the restricted consent language

narrows the extension agreements to a subset of the "partnership items" covered by

paragraph (2); it does not expand the agreements to cover some broader, undefined

category of "partnership flow-through items" for an entity mentioned nowhere in

the agreements.  The structure and plain language of the extension agreements

therefore require that "partnership flow-through items of First Ship LLC" be

limited to "partnership items" of that named partnership and no other entity.

> **B.    The TEFRA Regime and Rules of Contract Construction Compel the Conclusion that the Restricted Consent Agreements Are Limited to Partnership Items of the First Ship Partnership**
>
> **1.    The term "partnership item" is at the core of the TEFRA regime and the term must be construed according to its well-defined legal meaning**

To control the scope of partnership audits and litigation, Congress included

Code section 6231(a)(3) in TEFRA, which (as expanded on by IRS regulations)

defines "partnership item."  Thus, "partnership item" has a specific and technical

legal meaning that is outcome determinative on a variety of partnership procedural

22

issues ranging from the notice that must be given to partners regarding a

partnership audit to a court's jurisdiction to consider a tax dispute.  Indeed,

"partnership item" is the *sine qua non* for every provision in TEFRA.[18]

Although the restricted consent language included in the extension

agreements here does not itself reference the legal definition of "partnership

items," that definition (*i.e.*, Code section 6231(a)(3)) is specifically cited in

Paragraph (2) of the Form 872-I extension agreements.  ER 140-163.  Under

––––––––––––––––––––

[18] *See, e.g., Monahan v. Comm'r*, 321 F.3d 1063, 1064 (11th Cir. 2003) ("The centralized procedures under TEFRA apply only to 'partnership items.'").  The term "partnership item" or "partnership items" is used nearly one hundred times in the thirteen sections of the Code that govern partnership audit and litigation procedures.  *See, e.g.*, I.R.C. § 6221 ("[T]he tax treatment of any partnership item . . . shall be determined at the partnership level."); I.R.C. § 6222(a) (requiring that partners treat "partnership item[s]" on their returns consistent with the partnership); I.R.C. § 6223(a) (notice requirements for audit and audit determinations "with respect to a partnership item"); I.R.C. § 6224(a) (participation rights for any partner in an audit or other administrative proceeding that involves "partnership items"); I.R.C. § 6225(a) (generally prohibiting the assessment of tax with respect to "any partnership item" before completion of the unified audit proceedings); I.R.C. § 6226 (providing the Tax Court, the district courts and the Court of Federal Claims with jurisdiction over petitions challenging IRS adjustments to "partnership items"); I.R.C. § 6227 (providing administrative adjustment request ("AAR") procedures (the partnership equivalent of refund procedures) for "partnership items"); I.R.C. § 6228 (providing for judicial review of AAR proceedings involving "partnership items"); I.R.C. § 6229 (providing a special assessment limitations rule for "tax . . . which is attributable to any partnership item"); *see also* I.R.C. § 702(d) (cross referencing, in the statute that governs the substantive tax treatment of partnerships, the TEFRA provisions of Code sections 6221 et seq. "[f]or rules relating to procedures for determining the tax treatment of partnership items . . . .").

applicable rules of contract construction, the use of a legal term of art in a contract

is presumed to carry with it the accepted definition of that term, even if not

referenced explicitly.  In *Dart Advantage Warehousing, Inc. v. United States*, the

Court of Federal Claims[19] articulated this rule as follows:

> "The parties are presumed to be aware of applicable statutes
> and to intend to incorporate them."  24 Corbin on Contracts §
> 24.26, at 273 (1998).  In this regard, the law becomes part of
> the contemporaneous circumstances of the contract's execution
> and is incorporated, without reference, into the agreement itself.
> *See Norfolk & W. Ry. Co. v. Am. Train Dispatchers' Ass'n*, 499
> U.S. 117 (1991) ("Laws which subsist at the time and place of
> the making of a contract . . . enter into and form a part of it, as
> fully as if they had been expressly referred to or incorporated in
> its terms."); *see also* 24 Corbin on Contracts § 24.26, at 271
> (noting that rules and regulations are always considered as
> contemporaneous circumstances).

52 Fed. Cl. 694, 700 (2002).  More specifically, when interpreting contracts that

incorporate well-defined, technical terms of art, courts have not allowed one party

to the contract to vary from the well-settled meaning of such terms.  *Scottsdale Ins.*

*Co. v. Flowers*, 513 F.3d 546, 566 (6th Cir. 2008) ("In short, the phrase 'scope of

employment' is a legal term of art which Scottsdale incorporated into its contract

---

[19] The Court of Federal Claims possesses exclusive jurisdiction over contractual
suits against the United States for amounts in excess of $10,000.  28 U.S.C. §§
1346(a)(2), 1491(a)(1).  Thus, most cases involving disputes over contracts with
the federal government are decided by that court and can be appealed to the United
States Court of Appeals for the Federal Circuit.  Because restricted consents are
written agreements between taxpayers and the United States that are interpreted
using contract principles, those cases are applicable here.

24

with Morton Center.  As such, the meaning of the term is not doubtful.");
*Greenwood v. Stevenson*, 88 F.R.D. 225, 230 (D.R.I. 1980) ("It is well-settled,
however, that when contracting parties use terms of art, they will be deemed to
have 'intended' the full legal meaning of those words."); Restatement (Second) of
Contracts § 202(3)(b) (1981) ("[T]echnical terms and words of art are given their
technical meaning when used in a transaction within their technical field.").

Because "partnership item" has a settled legal definition that sits at the core
of the TEFRA procedural regime and is referenced explicitly in Paragraph (2) of
the extension agreements themselves, the reference to "partnership flow-through
items of First Ship LLC" in the limiting language of the restricted consents must be
limited to "partnership items" of that entity.  This construction is fully consistent
with the fact that, in a tiered partnership structure, "partnership items" of every
entity in that structure "flow-through" to the ultimate taxpayers.  Given the
established legal meaning of "partnership item" and the consistent, general
meaning of "flow-through," the inclusion of that phrase does not somehow sweep
into the extension agreements "partnership items" of unnamed entities.[20]

---

[20] Partnerships (or, as in this case, limited liability companies treated as
partnerships for tax purposes) are but one example of "flow-through" entities under
the tax law.  Others include Subchapter S corporations defined under Code section
1361 and grantor trusts whose "flow-through" treatment is recognized under Treas.
Reg. § 1.671-3.  Because "flow-through" is a generic term used in a number of

**2.     Principles of contract construction require that the term "partnership flow-through items" be construed consistent with the well-established definition of "partnership items"**

In ruling that the Form 872-I extension agreements applied additionally to partnership items of the lower-tier 2000-A Partnership, which is nowhere mentioned in those agreements, the District Court did not consider the established legal definition of "partnership item."  Rather, it simply noted the connection between the lower-tier 2000-A Partnership and the upper-tier First Ship Partnership and summarily concluded that the IRS's adjustment was to "the liabilities claimed by [the] 2000-A [Partnership], which in turn [the] First Ship [Partnership] has passed through as its own losses."  ER 089.

As a threshold matter, the District Court's ruling is misplaced because the liabilities contributed to the lower-tier 2000-A Partnership were never "claimed by" that partnership.  Further, the ruling is in error because it reads the critical words "partnership" and "item" out of the restricted consent language in the extension agreements, violating established principles of contract construction which require that all provisions in a contract be read together to harmonize their interpretation and application.  *See, e.g., Peterson v. Minidoka County School Dist.*

---

different federal tax contexts, inclusion of that phrase here should not be construed to have special meaning, nor does it justify varying from the established definition of "partnership items."

*No. 331,* 118 F.3d 1351, 1359 (9th Cir. 1997)*, amended,* 132 F.3d 1258 (9th Cir. 1997) ("The usual rule of interpretation of contracts is to read provisions so that they harmonize with each other, not contradict each other."); *see also Arizona v. United States*, 575 F.2d 855, 863 (1978). Thus, absent a specific definition in the extension agreements giving unique and broader meaning to "partnership flow-through items," that term must be construed consistent with the well-established legal meaning of "partnership item."

The Federal Circuit followed this rule in *Julius Goldman's Egg City v. United States*, 697 F.2d 1051 (Fed. Cir. 1983), when it rejected the appellant's effort to ascribe special meaning to a contract term that varied slightly in phraseology from a term used elsewhere in the agreements. The appellant argued that a constructive change in the contract occurred when the government required that it clean and disinfect "manufacturing and support facilities," which the appellant asserted were outside the scope of the contractual term "poultry premises." *Id. at* 1057. The Court rejected this construction, citing references elsewhere in the contract to appellant's "premises" generally in refusing to assign unique meaning to "poultry premises." *Id. at* 1057-58; *see also United Food Servs., Inc. v. United States*, 19 Cl. Ct. 539, 545 (1990) (construing the term "serving line" in a government contract consistent with references to the term "serving" elsewhere in the same agreements); *Greenwood*, 88 F.R.D. at 232

27

(rejecting argument that "accrued costs" has unique meaning in light of the well-established legal definition of "costs").

Consistent with the rule requiring that different articulations of contract terms be harmonized, in *Unicon Mgmt. Corp. v. United States*, 375 F.2d 804, 806-07 (1967), the Court of Claims rejected the plaintiff's request for an equitable adjustment to a federal contract based on a discrepancy between the contract specification (which contemplated a wholly concrete floor) and drawings attached to and incorporated in the contract (which contemplated a partial steel floor). Even if, standing alone, the provisions might have had different meanings (which in this case Paragraph (2) of the Forms 872-I and the restricted consent language do not), the court considered the contract as a whole and interpreted the drawings as "supplementing" the specification. *Id.* at 806 ("The rule, however, which the courts have always preferred is, where possible, to interpret the provisions of a contract as coordinate not contradictory.").

Applying these principles here, the reference to "partnership flow-through items" in the restricted consent provision must be construed as consistent with the established legal definition of "partnership items" in Paragraph (2) of the Form 872-I extension agreements, which cites the statutory definition set forth in Code section 6231(a)(3). Principles of contract consistency and harmonization are particularly applicable where, as discussed above, "partnership items" has a

controlling meaning under both TEFRA and the IRS's own regulations, and that term is cited in the extension agreements themselves. In contrast, "partnership flow-through items" has no definition under the tax law and should not be given an expansive and strained meaning to cover "partnership items" of a lower-tier entity not mentioned anywhere in the agreements.

## II.   THE DISTRICT COURT'S ERRONEOUS INTERPRETATION OF THE RESTRICTED CONSENTS IS DEMONSTRATED BY THE FACT THAT ITS FINAL DECISION DIRECTLY CONFLICTS WITH ITS RULING ON THE ASSESSMENT LIMITATIONS PERIOD

The District Court's ruling denying Taxpayers' motion for partial summary judgment is premised on a broad and erroneous reading of the words "flow-through" to sweep into the Form 872-I extension agreements *all* partnership items of the unnamed, lower-tier 2000-A Partnership. That the District Court's broad reading is in error is illustrated by the fact that certain of the adjustments included in the FPAA and sustained in the final decision and judgment did not "flow-through" the First Ship Partnership at all. Rather, they flowed through Fourth Ship LLC and LMGA, the minority partners that collectively held an almost 23 percent interest in the lower-tier 2000-A Partnership. This error supports Taxpayers' position that the restricted consent language of the Forms 872-I must be limited to "partnership items" of the First Ship Partnership and does not include *any*

partnership items of the lower-tier 2000-A Partnership.[21]

      In its final judgment, the District Court interpreted the Forms 872-I to hold open the assessment limitations period not only for partnership items of the First Ship Partnership, but also a broad and undefined category of items that purportedly "flow through" the First Ship Partnership, including *certain* partnership items of the 2000-A Partnership, *i.e.,* the contributions of assets and liabilities made to the lower-tier 2000-A Partnership.  Even assuming *arguendo* that this rationale was correct, it does not support a determination that the assessment limitations period remains open for adjustments made to items that "flow through" Fourth Ship LLC and LMGA, the minority partners in the lower-tier 2000-A Partnership.  Simply put, with respect to these minority partners, the IRS's adjustments to the 2000-A Partnership's return do not "flow through" the First Ship Partnership's return.  ER 007; ER 023; ER 236.  The following illustration of the entity's ownership structure illustrates the District Court's error.

––––––––––––––––––––

[21] Even if this Court were to conclude that the extension agreements reached the IRS's adjustment to some partnership items of the 2000-A Partnership, it must nonetheless reverse the District Court with respect to the adjustments that only "flow-through" the minority partners of the lower-tier 2000-A Partnership (Fourth Ship LLC and LMGA) rather than the First Ship Partnership.



Even under the District Court's expansive interpretation of the extension agreements to cover anything that "flows through" the First Ship Partnership, including partnership items of an unnamed, lower-tier entity, it cannot be disputed that almost 23 percent of the adjustments made by the FPAA[22] (other than the adjustment to the assets and liabilities contributed by the First Ship Partnership) *did not* "flow through" the First Ship Partnership. Rather, that portion of the FPAA adjustments "flowed through" Fourth Ship LLC and LMGA. The reason

---

[22] These other adjustments include professional fees in the amount of $100,082, reported as deductions on the 2000-A Partnership's return and additional professional fees of $4,308,787 that were included in the basis of the partners in their interests in the 2000-A Partnership. ER 040; ER 136; ER 138.

the Form 872-I extension agreements do not, even under the District Court's

erroneous approach, reach almost one quarter of these other FPAA adjustments is

clear—the plain language of those agreements simply does not cover "partnership

items" of the lower-tier 2000-A Partnership.

### III. THE DISTRICT COURT MISINTERPRETED AND MISAPPLIED A PRE-TEFRA TAX COURT MEMORANDUM OPINION

#### A. The District Court Misread the Facts and Holding of *Brody*

In reaching the conclusion that "partnership flow-through items of First Ship

LLC" included "partnership items" of the lower-tier 2000-A Partnership, the

District Court's December 11, 2009 order denying Taxpayers' motion for partial

summary judgment relies heavily on an erroneous reading of *Brody v. Comm'r*, 55

T.C.M. (CCH) 808 (1988) that ignores the central importance of the term

"partnership item" in this case.  Read properly, *Brody* fully supports Taxpayers'

position that an agreement to extend the assessment limitations period for

adjustments arising from a specific entity must, at a minimum, reference that

entity.

In *Brody*, the taxpayers executed a restricted consent to extend the

assessment limitations period for their 1978 tax year, but specifically limited that

consent to adjustments arising from a lower-tier partnership, Thunderbird (the

32

equivalent of the lower-tier 2000-A Partnership in this case).[23] The IRS issued a notice of deficiency to the taxpayers reducing their share of loss allocated to them from an upper-tier partnership (the equivalent of the First Ship Partnership here). The allocated loss stemmed from adjustments that originated in the lower-tier entity, Thunderbird. The Tax Court rejected the taxpayers' argument that inserting an upper-tier entity between them and Thunderbird placed the adjustment outside the scope of the restricted consent agreement. Because the restricted consent agreement specifically mentioned Thunderbird, the entity that the adjustment arose from, the court held that the adjustment was covered by the agreement and was therefore timely.

*Brody* thus reached the logical conclusion that when an adjustment arises from an entity that is specifically named in a restricted consent, the consent should be read to cover that adjustment irrespective of the fact that the taxpayer holds its interest in the named entity indirectly. That is the exact opposite of the facts here, where the restricted consent language in the Form 872-I agreements makes no reference whatsoever to the lower-tier 2000-A Partnership. The District Court

---

[23] The restricted consent also extended to the taxpayers' "share of any items of income, gain, loss, deduction, credit and/or other distributions from an entity(ies) known as: Thunderbird" and to any adjustments to Thunderbird's return that also affected their return. 55 T.C.M. at 809.

simply misread *Brody* as holding that any adjustment that is "passed through" an

upper-tier entity is somehow swept into an extension agreement entered into by the

upper-tier entity that makes no reference to the lower-tier entity whose items are

actually being adjusted.

>    **B.**    **The District Court's Misreading of Brody Caused it to Render a Decision that Conflicts with TEFRA's Entity-Level Approach to Partnership Audits by Failing to Recognize the Lower-Tier 2000-A Partnership and the First Ship Partnership as Separate Juridical Entities with Their Own Separate and Distinct Partnership Items**

The District Court also made a fundamental error in failing to recognize the

critical fact that *Brody* predates TEFRA and was decided under a procedural

regime that ignored partnerships as separate juridical entities.[24]  Prior to TEFRA,

whether or not an adjustment was of a "partnership item" and, if so, of which

partnership, was of limited consequence in determining the scope of a restricted

consent agreement.  At that time, a partnership audit required separate audits of

every partner in separate proceedings.  In contrast to determining the tax

---

[24] The District Court's repeated mischaracterizations of *Brody* appear to reflect an erroneous belief that *Brody* was a TEFRA case.  The District Court referred to the issuance of a "notice of deficiency to BDB," a "notice of deficiency issued to BDB," and "the FPAA issued to BDB."  ER 090.  As a technical matter, partnerships do not pay tax and are not (and have never been) subject to notices of deficiency.  Partnership items only became subject to adjustment at the partnership level (via an FPAA) with the enactment of TEFRA.

attributable to a partnership's items of income, gain, loss, deduction, and credit separately for each partner, TEFRA "created a single unified procedure for determining the tax treatment of all partnership items at the partnership level." *In re Crowell*, 305 F.3d 474, 478 (6th Cir. 2002) (citing H.R. Conf. Rep. No. 97-760, pt. 2, at 599-600 (1982)); *see also* I.R.C. § 6221. Thus, in the tiered partnership context, TEFRA requires that each partnership be treated as a separate juridical entity, in contrast to the pre-TEFRA regime (applicable in *Brody*) under which partnerships were effectively ignored and audits and litigation were handled separately at the individual partner level.[25]

As this case illustrates, the treatment of adjustments arising from partnership audits under the pre- and post-TEFRA regimes are inapposite. Under TEFRA, the entire procedural regime—including the applicable limitations period—turns on whether the adjustment is to a "partnership item" and, if so, of which particular partnership. In this case, the IRS's adjustment to contributions to the lower-tier 2000-A Partnership and the resulting adjustment to the short-term capital loss

---

[25] Illustrating the importance the IRS places on recognizing each partnership as a separate juridical entity, the IRS takes the position administratively and in litigation that for TEFRA procedural purposes entities that are otherwise ignored for income tax purposes under the Code must nonetheless be recognized as separate entities. *See, e.g.,* Rev. Rul. 2004-88, 2004-2 C.B. 165 (holding that an entity otherwise disregarded for federal tax purposes is a regarded entity for purposes of determining whether the TEFRA procedural rules apply).

resulting from the 2000-A Partnership's liquidation, derive solely from adjustments to "partnership items" of the 2000-A Partnership. In relying on *Brody*, the District Court ignored this critical distinction and, more fundamentally, ignored TEFRA altogether in determining that the plain language of the Form 872-I extension agreements referencing only the First Ship Partnership somehow extended to cover "partnership items" of the lower-tier 2000-A Partnership.

By interpreting the Form 872-I extension agreements in a manner that conflates partnership items of the First Ship Partnership with those of the lower-tier 2000-A Partnership, the District Court's decision fails to draw the necessary distinction between two legally distinct entities. If the restricted consents were to cover "partnership items" of the lower-tier 2000-A Partnership, they were required, at a minimum, to reference the 2000-A Partnership in some manner. Otherwise, the agreements blend together as "partnership flow-through items" the statutorily-defined "partnership items" of separate partnerships, violating the TEFRA mandate that each partnership be treated as a separate entity with its own separate notice requirements under Code section 6223, its own minimum limitations period under Code section 6229, and its own separate application of every other provision in TEFRA, each controlled by the scope and definition of "partnership item."

36

### C. The Court of Federal Claims' Recent Opinion in *Russian Recovery Fund* Reflects the Legally Correct Analysis of an Extension Agreement Under the TEFRA Regime

The Court of Federal Claims' recent opinion in *Russian Recovery Fund Ltd. v. United States*, 101 Fed. Cl. 498 (2011) reflects the proper application of the TEFRA regime to an agreement extending the assessment limitations period in the context of a tiered partnership.[26]  In *Russian Recovery Fund*, the IRS issued an FPAA adjusting partnership items (foreign currency losses) of a lower-tier partnership for its 2000 tax year.  The tax matters partner of the upper-tier partnership and the IRS executed a Form 872-P extension agreement that extended the assessment period for "partnership items" of the "named" upper-tier partnership.  *Id.* at 500-01.  The lower-tier partnership was not named in the extension agreement.  The taxpayer filed a motion for partial summary judgment arguing that the FPAA adjustment to a partnership item of the lower-tier partnership (*i.e.*, the foreign currency losses) was time-barred.  In opposing that motion, the government argued that the Form 872-P extension agreement applied to suspend the limitations period with respect to the losses of the lower-tier partnership because those losses flowed through to and became "affected items" of

---

[26] The opinion separately analyzes the statute of limitations issue for two partners, James DiBiase and Nancy Zimmerman.  The Court's discussion of Mr. DiBiase's limitations period is of primary relevance here.

the upper-tier partnership.  *Id.* at 502-03.  The Court rejected this argument, citing the plain language of the Form 872-P extension agreement and the fact that the agreement referred only to "partnership items" of the "named" upper-tier partnership.  *Id.* at 510.  Because the IRS's adjustment was to a "partnership item" of the lower-tier partnership, which was not named in the extension agreement, the Court concluded that "[t]he extension agreement does not assist [the IRS's] attempt to reopen closed tax years based on the [upper-tier partnership's] extension agreement."  *Id.*  Because the TEFRA regime treats tiered partnerships as separate entities, the fact that the adjustment to the unnamed lower-tier partnership's return "flowed-through" to become an affected item of the named upper-tier partnership did nothing to change this result.

In rejecting the IRS's effort to bootstrap partnership items of a lower-tier partnership into an extension agreement covering only partnership items of an upper-tier partnership, the Court noted that the government's "argument interchanges [the two partnerships] freely in both the statutory scheme as well as the consent agreement."  *Id.*  Thus, the Court followed TEFRA's mandate in respecting tiered partnerships as separate juridical entities, each with its own distinct partnership items and each with its own controlling minimum limitations periods.

38

The United States made, and the District Court adopted, the same flawed argument here, citing "partnership flow-through items of" the First Ship Partnership as support for its ability to conflate partnership items of the First Ship Partnership, which was named in the Form 872-I extension agreements, with partnership items of the lower-tier 2000-A Partnership, which was not. As in *Russian Recovery Fund*, the Form 872-I extension agreements here name only the upper-tier partnership, yet the IRS's FPAA adjustments are to "partnership items" of the lower-tier 2000-A Partnership. And as in *Russian Recovery Fund*, the fact that partnership items of the lower-tier partnership might "flow through" the upper-tier partnership does not make them "partnership items" of that named partnership or otherwise pull them into the scope of the Form 872-I extension agreements.

Consistent with the ruling in *Russian Recovery Fund*, the IRS should be held to the settled legal definition of "partnership items" and should not be permitted to conflate partnership items of two separate juridical entities. For the restricted consent provision in the Form 872-I extension agreements to apply to "partnership items" of the lower-tier 2000-A Partnership, at a minimum, those agreements must have included some reference to the 2000-A Partnership. They do not and, as in *Russian Recovery Fund*, the plain language of the agreements cannot be construed to cover what are indisputably partnership items of the lower-tier 2000-A Partnership.

## CONCLUSION

The period of time in which the IRS could assess additional tax arising from the adjustments set forth in the FPAA issued to the lower-tier 2000-A Partnership expired prior to issuance of that FPAA.  This Court should therefore vacate the District Court's final judgment and reverse (1) the December 11, 2009 order denying Taxpayers' motion for partial summary judgment, (2) the July 8, 2011 Final Pretrial Order to the extent the District Court determined that adjustments in the FPAA issued to the 2000-A Partnership were not time-barred, and (3) the Order Denying Petition and Entering Findings of Fact and Conclusion of law to the extent the District Court upheld the adjustments in the in the FPAA issued to the 2000-A Partnership.  This Court should further remand the case to the District Court with the instruction that judgment be entered in favor of Taxpayers with respect to each of the adjustments set forth in the FPAA issued to the 2000-A Partnership.


March 8, 2012                    /s/ Michael J. Desmond
                                 Michael J. Desmond
                                 The Law Offices of Michael J. Desmond, APC
                                 233 E. Carrillo Street, Suite A
                                 Santa Barbara, CA  93101
                                 Telephone:  (805) 618-1862
                                 Facsimile:  (805) 617-0291
                                 Email:  michael@desmondtaxlaw.com

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Appellants state that they are not aware of any related cases pending in this Court.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,250 words, excluding the parts of the brief exempted by Fed. R App. P. 32(a)(7)(B)(iii).

This brief complies with typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Times New Roman in 14-point font.


March 8, 2012                    /s/ Michael J. Desmond
                                Michael J. Desmond
                                The Law Offices of Michael J. Desmond, APC
                                233 E. Carrillo Street, Suite A
                                Santa Barbara, CA  93101
                                Telephone:  (805) 618-1862
                                Facsimile:  (805) 617-0291
                                Email:  michael@desmondtaxlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system on March 8, 2012.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


March 8, 2012                    /s/ Michael J. Desmond
                                 Michael J. Desmond
                                 The Law Offices of Michael J. Desmond, APC
                                 233 E. Carrillo Street, Suite A
                                 Santa Barbara, CA  93101
                                 Telephone:  (805) 618-1862
                                 Facsimile:  (805) 617-0291
                                 Email:  michael@desmondtaxlaw.com