No. 11-17879

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————————

CANDYCE MARTIN 1999 IRREVOCABLE TRUST,
a Partner other than the Tax Matters Partner, and

CONSTANCE GOODYEAR 1997 IRREVOCABLE TRUST,
a Partner other than the Tax Matters Partner,

Petitioners-Appellants

v.

UNITED STATES OF AMERICA,

Respondent-Appellee

————————

ON APPEAL FROM THE JUDGMENT OF THE
UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

————————

BRIEF FOR THE APPELLEE

————————

KATHRYN KENEALLY
  *Assistant Attorney General*

TAMARA W. ASHFORD
  *Deputy Assistant Attorney General*

GILBERT S. ROTHENBERG     (202) 514-3361
JONATHAN S. COHEN         (202) 514-2970
ARTHUR T. CATTERALL       (202) 514-2937
  *Attorneys, Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*Of Counsel:*
MELINDA L. HAAG
  *United States Attorney*
TOM MOORE
  *Assistant United States Attorney*

# TABLE OF CONTENTS

**Page**

Table of contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i
Table of authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv
Glossary   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii
Statement of jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Statement of the issue.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Statement of the case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Statement of facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     A.   The tax shelter. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     B.   The IRS audit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     C.   District Court proceedings. . . . . . . . . . . . . . . . . . . . . . . . . 10

Summary of argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Argument:

     The District Court correctly held, in denying taxpayers'
     motion for partial summary judgment, that the IRS
     preserved its ability to timely assess the deficiencies . . . . . . . . . 16

Standard of review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

I.   Introduction:  The rules governing the assessment of
    income taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

     A.   Deficiency assessments not pertaining to partnership
        items . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

     B.   Deficiency assessments attributable to partnership
        items. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

         1.   TEFRA and its effect on the generally applicable
            period of limitations on assessment . . . . . . . . . . . . . . 18

**Page**

2.   TEFRA partnership proceedings and their effect
on the partners' respective periods of limitation
on assessment.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

II.  The extension agreements, coupled with the issuance of
the 2000-A FPAA, preserved the IRS's ability to make
timely assessments of the deficiencies. . . . . . . . . . . . . . . . . . . . . 23

A.   Because the deficiencies are "attributable to
partnership flow-through items of First Ship,"
the period for assessing the deficiencies was
extended by the extension agreements. . . . . . . . . . . . . . . . 24

1.   The term "partnership flow-through items of
First Ship" simply refers to partnership items
of First Ship that flow through to its partners. . . . . . 24

2.   The deficiencies are attributable to partnership
items of First Ship that flowed through to its
partners. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

3.   Taxpayers' arguments in support of their
claim that the extension agreements do not
apply to the deficiencies are meritless. . . . . . . . . . . . 30

a.   Taxpayers' initial premise, that the
extension agreements apply to
adjustments to partnership items rather
than assessments of tax, is incorrect. . . . . . . . 30

b.   Taxpayers' critique of the District Court's
reliance on *Brody* is unavailing. . . . . . . . . . . . 33

c.   Taxpayers' reliance on *Russian Recovery
Fund* is misplaced, since the case is
distinguishable and in any event was
wrongly decided on this point. . . . . . . . . . . . . . 36

**Page**

4.    Summary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

B.    The issuance of the 2000-A FPAA suspended the
period of limitations on assessment held open by
the extension agreements. . . . . . . . . . . . . . . . . . . . . . . . . . 41

1.    Operation of I.R.C. § 6229(d)    . . . . . . . . . . . . . . . 41

2.    Practical considerations. . . . . . . . . . . . . . . . . . . . . . . 45

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
Statement of related cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
Addendum. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
Certificate of compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
Certificate of service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

# TABLE OF AUTHORITIES

**Cases:**                                                      **Page(s)**

*AD Global Fund, LLC v. United States*,
    481 F.3d 1351 (Fed. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . 19

*Andantech L.L.C. v. Commissioner*,
    331 F.3d 972 (D.C. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . 19

*Bakersfield Energy Partners, LP v. Commissioner*,
    568 F.3d 767 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . 19

*Balvage v. Ryderwood Improvement and Serv. Ass'n, Inc.*,
    642 F.3d 765 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . 16

*Brody v. Commissioner*,
    55 T.C.M. (CCH) 808 (1988). . . . . . . . . . . . . . . . 11-12, 33-36

*Curr-Spec Partners, L.P. v. Commissioner*,
    579 F.3d 391 (5th Cir. 2009). . . . . . . . . . . . . . . . . . 22, 42, 45

*Duffie v. United States*,
    600 F.3d 362 (5th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . 21

*Eberle v Anaheim*,
    901 F.2d 814 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . 41

*G-5 Inv. P'ship v. Commissioner*,
    128 T.C. 186 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Ginsburg v. Commissioner*,
    127 T.C. 75 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 32

*Keller v. Commissioner*,
    556 F.3d 1056 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . 5

*Maxwell v. Commissioner*,
    87 T.C. 783 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Rawls Trading, L.P. v. Commissioner*,
    138 T.C. No. 12, 2012 WL 998112
    (Mar. 26, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . 43, 46-47

*Rhone-Poulenc Surfactants and Specialties, L.P.
    v. Commissioner*, 114 T.C. 533 (2000), *appeal
    dismissed as premature*, 249 F.3d 175
    (3d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 42, 45

*Russian Recovery Fund Ltd. v. United States*,
    101 Fed. Cl. 498 (2011). . . . . . . . . . . . . . . . 28, 32, 36-40, 43

*Sente Inv. Club P'ship v. Commissioner*,
    95 T.C. 243 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

## Cases (cont'd): Page(s)

*Tigers Eye Trading, LLC v. Commissioner*,
    138 T.C. No. 6, 2012 WL 445944 (Feb. 13, 2012). . . . . . . . . 26
*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . 41

## Statutes:

Internal Revenue Code of 1986 (26 U.S.C.):

§ 671 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
§ 701. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
§ 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
§ 702(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
§ 703. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
§ 722. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
§ 731(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
§ 733(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
§ 752(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
§ 752(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
§ 6201(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
§ 6211(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
§ 6212(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
§ 6213(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 21
§ 6221. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
§ 6225(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
§ 6226. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3-4, 21
§ 6226(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 21
§ 6226(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
§ 6226(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
§ 6229. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
§ 6229(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 42, 44
§ 6229(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
§ 6229(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
§ 6229(d). . . . . . . . . . . . . . . . . . . . . . . 22, 24, 42, 44-45, 47
§ 6230(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
§ 6230(a)(2)(A)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**Statutes (cont'd):**                                            **Page(s)**

Internal Revenue Code of 1986 (26 U.S.C.):

§ 6231(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
§ 6231(a)(2)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
§ 6231(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 29, 40
§ 6231(a)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 43
§ 6231(a)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
§ 6231(a)(8). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
§ 6231(a)(11). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
§ 6231(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
§ 6501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 44-45
§ 6501(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20
§ 6501(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
§ 6501(c)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
§ 6503(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
§ 6662. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
§ 6662(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
§ 6662(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
§ 6662(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
§ 6662(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
§ 6662(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
§ 6662(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C.:

§ 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 1346(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
§ 2107(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Regulations:**

Treasury Regulations (26 C.F.R.):

§ 301.6231(a)(3)-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
§ 301.6231(a)(3)-1(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
§ 301.6231(a)(3)-1(a)(1)(i). . . . . . . . . . . . . . . 18, 26-27, 29
§ 301.6231(a)(5)-1(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Miscellaneous:**                                                    **Page**

I.R.M. § 25.6.22.8.15 (Aug. 1, 2003). . . . . . . . . . . . . . . . . . . . . . . . . . 26

IRS Notice 2000-44, 2000-2 C.B. 255. . . . . . . . . . . . . . . . . . . . . . . . 8

# GLOSSARY

2000-A – First Ship 2000-A, LLC

CM Trust – Candyce Martin 1999 Irrevocable Trust

CPC – Chronicle Publishing Company

First Ship – First Ship LLC

Fourth Ship – Fourth Ship LLC

FPAA – notice of final partnership administrative adjustment

LMGA – LMGA Holdings, Inc.

TEFRA – Tax Equity and Fiscal Responsibility Act of 1982

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————

No. 11-17879

CANDYCE MARTIN 1999 IRREVOCABLE TRUST,
a Partner other than the Tax Matters Partner, and

CONSTANCE GOODYEAR 1997 IRREVOCABLE TRUST,
a Partner other than the Tax Matters Partner,

Petitioners-Appellants

v.

UNITED STATES OF AMERICA,

Respondent-Appellee

————

ON APPEAL FROM THE JUDGMENT OF THE
UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

————

BRIEF FOR THE APPELLEE

————

## STATEMENT OF JURISDICTION

1.    These cases, consolidated below, are civil actions against the

United States under § 6226 of the Internal Revenue Code of 1986 (26

U.S.C.) ("I.R.C.").  (ER252-254, 262, 287.)[1]  District courts have original

jurisdiction over such actions pursuant to 28 U.S.C. § 1346(e).

---

[1] "ER" references are to the excerpts of record filed with the
appellants' opening brief.  "Br." references are to the appellants'
opening brief.  "Doc." references are to the documents in the original
record, as numbered by the Clerk of the District Court.

On November 12, 2008, appellants (collectively, "taxpayers"), acting in their capacity as a "5-percent group," filed a petition for readjustment of partnership items with respect to the 2000 tax year of First Ship 2000-A, LLC ("2000-A"). (ER262-263.) *See* I.R.C. §§ 6226(b)(1), 6231(a)(2)(B), (a)(11). Also on November 12, 2008, appellant Candyce Martin 1999 Irrevocable Trust ("CM Trust"), acting in its capacity as a "notice partner," filed a petition for readjustment of partnership items with respect to the 2001 tax year of First Ship LLC ("First Ship").[2] (ER287-288.) *See* I.R.C. §§ 6226(b)(1), 6231(a)(8). The Internal Revenue Service (IRS) had mailed notices of final partnership administrative adjustment to the respective tax-matters partners of 2000-A and First Ship on June 19, 2008. (ER271, 292.) Each petition was therefore filed within 60 days after the expiration of the 90-day period during which the tax-matters partner of the subject partnership could have filed such a petition. *See* I.R.C. § 6226(a), (b)(1). Prior to filing the petitions, CM Trust deposited amounts with the United States Treasury intended to satisfy the requirements of I.R.C. § 6226(e)

---

[2] Although 2000-A and First Ship were organized as limited liability companies under state (California) law, each is treated as a partnership for federal income tax purposes. Br. 7.

with respect to each case. (ER263-264, 288.) Accordingly, the jurisdictional prerequisites of I.R.C. § 6226 specific to each case were satisfied.

2.    The District Court rendered a final judgment in the consolidated case, disposing of all claims of all parties. (ER1.) This Court has jurisdiction under 28 U.S.C. § 1291.

3.    The District Court entered judgment on October 6, 2011. (ER318.) Taxpayers filed a notice of appeal on November 30, 2011, within 60 days after entry of judgment. (ER92-93.) Accordingly, the notice of appeal was timely. *See* 28 U.S.C. § 2107(b).

## STATEMENT OF THE ISSUE

Taxpayers and 12 other trusts (collectively, the "Martin family trusts" or "Trusts") own 100 percent of First Ship LLC, a pass-through entity that, during the year 2000, owned approximately 77 percent of another pass-through entity, First Ship 2000-A, LLC. In connection with an IRS audit of a transaction involving First Ship and 2000-A, each of the ultimate partners of First Ship – in some cases the relevant trust, and in some cases the individual treated as owning the relevant trust for tax purposes – executed a series of agreements extending the period during which the IRS could make "any deficiency assessment

-3-

[against such ultimate partner for the year 2000] … resulting from any adjustment … attributable to partnership flow-through items of First Ship LLC."  (ER37.)  The IRS could not disallow the loss that First Ship claimed from the transaction – and passed through to its partners – without first issuing a notice of final partnership administrative adjustment ("FPAA") pertaining to 2000-A, which it did prior to the expiration of the period described in the extension agreements.

The issue on appeal is whether the District Court correctly held that the extension agreements, coupled with the issuance of the FPAA pertaining to 2000-A, preserved the IRS's ability to timely assess the deficiencies in tax attributable to the Trusts' interests in 2000-A held through First Ship (the "deficiencies").

## STATEMENT OF THE CASE

These cases are actions for judicial review of two FPAAs issued by the IRS:  one with respect to the 2000 tax year of First Ship 2000-A, LLC (the "2000-A FPAA"), and one with respect to the 2001 tax year of First Ship LLC, the former 77-percent owner of 2000-A (the "First Ship FPAA").  (ER234, 236-237.)  *See* I.R.C. § 6226.  The 2000-A FPAA contained adjustments that effectively invalidated a year-end 2000 tax shelter involving First Ship and 2000-A, while the First Ship FPAA

-4-

disallowed deductions claimed by First Ship on its 2001 return in connection with the implementation of that shelter.  (ER14-15, 17-18, 20, 38-42.)  Both FPAAs included accuracy-related penalties under I.R.C. § 6662.  (ER40-42.)  On the parties' stipulation, the District Court consolidated the cases for all purposes.  (ER252-254.)

CM Trust moved for partial summary judgment as to the 2000-A FPAA on the ground that the period of limitations on assessment had expired with respect to the 2000 tax year of each of the ultimate partners of 2000-A, *i.e.*, those entities and individuals whose 2000 tax would be affected by the adjustments contained in the 2000-A FPAA. (ER239-251.)  The District Court denied that motion, and CM Trust moved to certify the court's order for interlocutory appeal.  (ER83-91.) The court denied that motion as well.  (ER83.)

After a 6-day bench trial, the District Court upheld the adjustments in the FPAAs and the penalty for negligence or disregard of rules or regulations.  (ER2, 44-78.)  *See* I.R.C. § 6662(b)(1).  The court made no determination regarding the substantial understatement penalty, *see* I.R.C. § 6662(b)(2), (d), and it held that the valuation misstatement penalties were inapplicable as a matter of law under *Keller v. Commissioner*, 556 F.3d 1056 (9th Cir. 2009).  (ER66-67, 72.)

*See* I.R.C. § 6662(b)(3), (e), (h).  This appeal by taxpayers followed.[3]
(ER92-93.)

## STATEMENT OF FACTS

### A.    The tax shelter

The Martin family trusts formerly owned just over 10 percent of
the shares of the Chronicle Publishing Company (CPC), a "subchapter
S" corporation which owned and operated various media outlets,
including the San Francisco Chronicle newspaper and television station
KRON.  (ER3-4.)  In 1999 and 2000, CPC sold substantially all of its
business assets for more than $2.1 billion.  (ER7.)

In November 2000, the Martin family trusts commenced a so-
called Son-of-BOSS transaction designed to generate an artificial (*i.e.*,
non-economic) $315 million loss for the purpose of offsetting the taxable
gain they realized on the sale of CPC's assets.  (ER48, 55, 64-65, 68, 74,
77.)  The Trusts undertook the transaction through a two-tier
partnership structure consisting of First Ship LLC (the upper-tier
partnership, formed in March 2000), and First Ship 2000-A, LLC (the

---

[3] The Government did not appeal the District Court's holding
regarding the valuation misstatement penalties.

lower-tier partnership, formed in October 2000).[4]  (ER23.)  The Trusts

owned 100 percent of First Ship, and First Ship owned approximately

77 percent of 2000-A.[5]  (*Id.*)

In order to create the loss, the Trusts purchased certain options

for $315.7 million and simultaneously sold largely offsetting options for

$314.8 million, requiring a cash outlay of $900,000.  (ER25.)  The

Trusts then contributed those "long" and "short" option positions to

First Ship, which in turn contributed them to 2000-A.  (ER29-30.)  Just

before the end of the year, 2000-A terminated its option positions, sold

the remainder of its assets (marketable securities), and distributed the

cash proceeds to its partners in liquidation.  (ER31-32.)

2000-A took the position that the potential payment obligation it

assumed with respect to the short option positions contributed to it by

First Ship ($314.8 million) was not a "liability" for tax purposes.

---

[4] In labeling the tiers in this manner, we follow the convention adopted by taxpayers in their opening brief.  Under this convention, tax items flow "up" from the lower-tier partnership to the upper-tier partnership and then to the partners of the upper-tier partnership.

[5] Two other entities owned by Martin family trusts – Fourth Ship LLC and LMGA Holdings, Inc. – held the remaining ownership interests in 2000-A.  (ER23.)  Those two entities were not directly involved in the Son-of-BOSS transaction.

(ER46.)  This position resulted in First Ship claiming that its contribution of the long and short option positions to 2000-A increased its tax basis in 2000-A by $315.7 million, notwithstanding that the Trusts had acquired those positions for $900,000.  (ER55.)  *See* IRS Notice 2000-44, 2000-2 C.B. 255 (warning that the IRS intended to attack such transactions on various grounds).  First Ship's artificially inflated "outside" basis in 2000-A accounted for virtually all of the $318 million capital loss that First Ship claimed (and allocated to the Trusts) on the liquidation of its interest in 2000-A at the end of 2000.  (ER32-33, 168.)  *See* I.R.C. § 731(a)(2).

## B.    The IRS audit

In 2004, the IRS commenced an audit of 2000-A's tax return for 2000 and First Ship's tax returns for 2000 and 2001.  (ER37.)  In connection with that audit, each of the ultimate partners of First Ship (hereafter, the "First Ship partners") executed a series of agreements extending the period of limitations on assessment for 2000.[6]  (*Id*.)  Each

---

[6] The "ultimate" partners of First Ship for tax purposes consisted of (1) those Martin family trusts that were separate taxable entities (nongrantor trusts), and (2) Martin family members who were treated as the owners of those Martin family trusts that were not separate taxable entities (grantor trusts).  *See* I.R.C. § 671.

of the extension agreements contained the following restrictive language:

> The amount of any deficiency assessment is to be limited to that resulting from any adjustment directly or indirectly (through one or more intermediate entities) attributable to partnership flow-through items of First Ship LLC, and/or to any adjustment attributable to costs incurred with respect to any transaction engaged in by First Ship LLC, any penalties and additions to tax attributable to any such adjustments, any affected items, and any consequential changes to other items based on any such adjustments.

(ER141, 143, 145, 147, 149, 151, 153, 155, 157, 159, 161, 163.)  The last of those agreements extended the period of limitations on assessment to June 30, 2008.  (ER37.)

On June 19, 2008, the IRS issued notices of final partnership administrative adjustment with respect to the 2000 tax year of 2000-A and the 2001 tax year of First Ship.  (ER271, 292.)  In the 2000-A FPAA, the IRS disregarded all transactions engaged in by 2000-A (including its receipt of the long and short option positions discussed above, and its liquidating distributions) for lack of economic substance, and it asserted both 20-percent and 40-percent accuracy-related penalties.  (ER38-41.)  In the First Ship FPAA, the IRS disallowed a $1,353,739 deduction claimed by First Ship on its 2001 return for fees

relating to its 2000 transaction with 2000-A, and also asserted 20-percent accuracy-related penalties.  (ER41-42.)

### C.    District Court proceedings

Appropriate partners of 2000-A and First Ship timely filed petitions for readjustment in the United States District Court for the Northern District of California.  (ER262, 287.)  After the District Court consolidated the cases for all purposes (ER252-54), CM Trust moved for partial summary judgment with regard to the 2000-A FPAA on the ground that any assessments resulting from that proceeding would be time-barred.  (ER241.)  Specifically, CM Trust argued that the extension agreements executed by the First Ship partners "did not contemplate, and thus [do] not permit, assessments … arising out of proposed adjustments attributable to partnership flow-through items of 2000-A."  (ER249.)

In response, the Government noted that "the IRS, under applicable law, is constrained to first adjust the items of First Ship 2000-A before computing the effect of that adjustment on First Ship." (Doc. 28, at 2.)  Accordingly, the Government continued, "[u]nder a reasonable reading of the extension agreement, the IRS is permitted to make whatever adjustments are necessary to clear the way for an

assessment to be made … based on the disallowance of First Ship's flow-through losses." Although CM Trust acknowledged in its reply that the IRS was required to adjust items of 2000-A before making the corresponding adjustments to items of First Ship, it maintained that, "because the IRS did not include any reference to 2000-A in the Consents, … the FPAA issued to 2000-A did not toll the statute of limitations on assessment." (Doc. 29, at 7.)

The District Court denied CM Trust's motion, holding that "the extension agreements encompass the adjustments made by the IRS in the FPAA issued to 2000-A." (ER91.) The court relied in part on *Brody v. Commissioner*, 55 T.C.M. (CCH) 808 (1988), in which the Tax Court held that an extension agreement limited to assessments resulting from adjustments to the items of a named partnership – a lower-tier partnership in which the Brodys indirectly held an interest through an upper-tier partnership – encompassed assessments resulting from the adjustments at the upper-tier level that resulted from the adjustments at the lower-tier level. The Tax Court rejected the Brodys' argument that "the omission of any reference to [the upper-tier partnership] in the consent had the effect of allowing the limitations period to close as

-11-

to [assessments resulting from adjustments to] partnership items from [the upper-tier partnership]." 55 T.C.M. at 812.

After the District Court denied CM Trust's motion to certify for appeal the order denying its motion for partial summary judgment, the case proceeded to trial in August 2011.  (ER2, 83.)  On October 6, 2011, the court issued a 77-page opinion and order sustaining the FPAAs in all respects save the assertion of the 40-percent penalty in the 2000-A FPAA.  (ER2-78.)  The court entered judgment in favor of the Government in accordance with its opinion, and taxpayers timely filed a notice of appeal.[7]  (ER1, 92-93.)

## SUMMARY OF ARGUMENT

The Martin family trusts set up a tiered-partnership arrangement to serve as the vehicle for an abusive tax shelter designed to eliminate over $300 million of taxable gain.  By the time the IRS learned of the scheme and commenced an audit, each Trust's (or Trust owner's) applicable period of limitations on assessment was about to expire.  The IRS therefore solicited consents to extend each such assessment period.

---

[7] In their opening brief, taxpayers expressly confine their appeal to the limitations issue decided by the District Court in denying their motion for partial summary judgment.  Br. 1, 3, 5.

The Trusts agreed to cooperate, but only if the extensions were limited to assessments arising out of the shelter that had triggered the audit.

Because the benefit of the shelter took the form of a $318 million capital loss claimed by the upper-tier partnership (First Ship) that passed through to the Trusts, the IRS agreed to limit each extension to deficiency assessments "attributable to partnership flow-through items of First Ship." Before the IRS could disallow the loss claimed by First Ship, however, it had to issue a notice of final partnership administrative adjustment pertaining to the lower-tier partnership (2000-A), which it did prior to the expiration of the period described in the extension agreements. Two of the Trusts (taxpayers) challenged the 2000-A FPAA, arguing, *inter alia*, that the IRS was barred from assessing the deficiencies resulting from the adjustments in the FPAA because those deficiencies were not covered by the extension agreements. The District Court correctly rejected this argument.

1.    Taxpayers' argument is foreclosed by the plain language of the extension agreements, which apply to deficiencies "attributable to partnership flow-through items of First Ship." The term "partnership flow-through items of First Ship" refers to First Ship's "partnership items" – a statutorily defined term – that flow through to its partners.

-13-

Regulations expressly provide that the term "partnership item" includes items of income, gain, loss, deduction, and credit of the partnership. Because the $318 million capital loss claimed by First Ship is a partnership item of First Ship, and because that loss flowed through to the partners of First Ship, the resulting tax deficiencies of those partners are attributable to partnership flow-through items of First Ship and are therefore covered by the extension agreements.

2.    Taxpayers do not dispute that the $318 million loss claimed by First Ship is a "partnership flow-through item of First Ship." Indeed, consistent with the Government's position, they strenuously argue that such term must be construed by reference to the statutorily defined term "partnership item." Nor do taxpayers dispute that the deficiencies at issue are attributable to the $318 million loss claimed by First Ship. Instead, they argue that, because the deficiencies originate with adjustments to partnership items of 2000-A, and because the extension agreements refer to partnership items of First Ship rather than partnership items of 2000-A, the agreements do not apply to the deficiencies. In so arguing, taxpayers lose sight of the fact that the agreements apply to assessments of tax, not adjustments to partnership items. In other words, the agreements are not FPAA-

-14-

specific; they apply to deficiencies attributable to partnership items of First Ship, regardless whether those partnership items reflect adjustments to partnership items of 2000-A effected by means of an FPAA pertaining to 2000-A.

Taxpayers' attempt to garner support from the Tax Court case the District Court found to be favorable to the Government's position, as well as from a recent Court of Federal Claims opinion dealing with a similar situation, is unavailing. In particular, the Court of Federal Claims case, aside from being wrongly decided on this point, is largely irrelevant here, because the loss claimed by the upper-tier partnership there, unlike the $318 million loss claimed by First Ship, represented the upper-tier partnership's share of a loss claimed by the lower-tier partnership.

3. Although taxpayers do not dispute the point, the issuance of the 2000-A FPAA had the effect of suspending, for the duration of these proceedings and for a period of one year thereafter, the period of limitations held open by the extension agreements. Accordingly, the IRS preserved its ability to make timely assessments of the deficiencies at issue.

For the foregoing reasons, the judgment of the District Court is correct and should be affirmed.

## ARGUMENT

**The District Court correctly held, in denying taxpayers' motion for partial summary judgment, that the IRS preserved its ability to timely assess the deficiencies**

### Standard of review

This Court reviews *de novo* a district court's grant or denial of a motion for partial summary judgment. *E.g.*, *Balvage v. Ryderwood Improvement and Serv. Ass'n, Inc.*, 642 F.3d 765, 775 (9th Cir. 2011).

## I. Introduction: The rules governing the assessment of income taxes

### A. Deficiency assessments not pertaining to partnership items

As a general matter, the IRS is required to assess (*i.e.*, record the liability for) federal income taxes within three years after the filing (or the due date, if later) of the return to which the tax relates. I.R.C. § 6501(a), (b)(1). This deadline is rarely an issue in the case of amounts reported as tax on the return, as the IRS is authorized to assess such amounts without any administrative notice. *See* I.R.C. § 6201(a)(1). If the IRS determines that additional tax is owing, however, it may not

assess such additional tax without first issuing a notice of deficiency, which the taxpayer is entitled to contest by filing a petition in the United States Tax Court.  I.R.C. § 6213(a) (first and second sentences); *see* I.R.C. §§ 6211(a) (defining the term "deficiency"), 6212(a) (authorizing notices of deficiency).  In that case, the running of the period of limitations on assessment of the deficiency is suspended until 60 days after the date on which the decision of the Tax Court becomes final.  I.R.C. § 6503(a)(1).

Under the foregoing framework (and assuming the applicability of the general 3-year period of limitation on assessment), the IRS may preserve its ability to make a timely assessment of a deficiency in tax by issuing a notice of deficiency within 3 years after the filing (or the due date, if later) of the return to which the deficiency relates.  Alternatively, the IRS may, prior to the expiration of the 3-year period, obtain the taxpayer's consent to extend that period, and then issue a notice of deficiency prior to the expiration of the extended period.  *See* I.R.C. § 6501(c)(4).

**B**. **Deficiency assessments attributable to partnership items**

### 1. TEFRA and its effect on the generally applicable period of limitations on assessment

Partnerships are not subject to federal income tax; instead, each partner takes into account his share of certain "separately stated items" of partnership income, gain, loss, deduction, and credit, as well as any residual partnership income or loss, in determining his tax. *See* I.R.C. §§ 701, 702, 703. Partnerships, however, *are* subject to a separate set of audit and litigation procedures enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"). *See* I.R.C. § 6231(a)(1) (defining "partnership" for these purposes). The central tenet of these provisions is that the tax treatment of any "partnership item" is determined at the partnership level rather than at the partner level. I.R.C. § 6221; *see* I.R.C. § 6231(a)(3) (defining "partnership item"). The most obvious examples of partnership items are the items of partnership income, gain, loss, deduction, and credit that, as indicated above, partners are required to take into account in determining their tax. *See* Treas. Reg. (26 C.F.R.) § 301.6231(a)(3)-1(a)(1)(i).

Consistent with TEFRA's procedural focus on the partnership level, I.R.C. § 6229(a) provides that, in the case of any income tax (*i.e.*, at the partner level) that is attributable to any partnership item (or to an affected item),[8] the period of limitation on assessment shall not expire any earlier than three years after the filing (or the due date, if later) of the partnership return to which the partnership item relates. *See Bakersfield Energy Partners, LP v. Commissioner*, 568 F.3d 767, 770 n.5 (9th Cir. 2009) (describing I.R.C. § 6229(a) as "provid[ing] a minimum time period in which the IRS can assess a tax deficiency" attributable to a partnership item or an affected item); *AD Global Fund, LLC v. United States*, 481 F.3d 1351, 1354 (Fed. Cir. 2007) (same); *Andantech L.L.C. v. Commissioner*, 331 F.3d 972, 977 (D.C. Cir. 2003) (same).

For example, assume that taxable trusts *A* and *B* are partners in the partnership *AB*, and that the general 3-year period of limitation on

---

[8] An affected item is an item of a partner that is affected by a partnership item. I.R.C. § 6231(a)(5); *see G-5 Inv. P'ship v. Commissioner*, 128 T.C. 186, 189 n.7 (2007) ("An 'affected item' is any item whose existence or amount depends on any partnership item."). For example, a partner's tax basis in his partnership interest is an affected item, since it is affected by partnership items such as partnership liabilities. *See* I.R.C. §§ 752(a), (b), 722, 733(1); Treas. Reg. § 301.6231(a)(5)-1(b).

assessment under I.R.C. § 6501(a) applies to the respective 2010 returns of *A* and *B*.  Assume further that *A* filed its 2010 return on April 15, 2011, that *AB* filed its 2010 return on June 15, 2011, and that *B* filed its 2010 return on October 15, 2011.  While the period for assessing the portion of *A*'s 2010 income tax that is unrelated to *AB* would expire on April 15, 2014, the period for assessing the portion that is attributable to *A*'s share of *AB*'s 2010 partnership items (or to *A*'s affected items) would expire on June 15, 2014.  In contrast, the period for assessing the portion of *B*'s 2010 income tax that is attributable to *B*'s share of *AB*'s 2010 partnership items (or to *B*'s affected items) – and for assessing the remainder of *B*'s 2010 tax, for that matter – would expire on October 15, 2014.

| Return filer | Filing date of 2010 return | Last day IRS may assess partner's tax that is unrelated to *AB* | Last day IRS may assess partner's tax that is related to *AB* |
|---|---|---|---|
| Partner *A* | April 15, 2011 | April 15, 2014 | June 15, 2014 |
| Partnership *AB* | June 15, 2011 | — | --- |
| Partner *B* | October 15, 2011 | October 15, 2014 | October 15, 2014 |

-20-

### 2. TEFRA partnership proceedings and their effect on the partners' respective periods of limitation on assessment

Under TEFRA, any IRS-initiated adjustments to partnership items must be pursued and resolved in a single, partnership-wide proceeding (both at the administrative stage and the judicial stage), rather than through separate proceedings with respect to each partner. *See, e.g., Duffie v. United States*, 600 F.3d 362, 365 (5th Cir. 2010). If the IRS audits a TEFRA partnership return, and determines that adjustments to partnership items are necessary, its ability to assess any partner-level deficiencies in tax that would result from such adjustments is subject to restrictions that are similar to those applicable to deficiency assessments outside the context of TEFRA. Thus, the IRS may not make any TEFRA-related deficiency assessments without first issuing a notice of final partnership administrative adjustment (FPAA), which the partners are entitled to challenge in a single judicial proceeding. *See* I.R.C. §§ 6225(a), 6226.[9] In that case, the running of any open period of limitation on assessment

---

[9] Unlike a notice of deficiency, which may be challenged only in the Tax Court, an FPAA may be challenged in the Tax Court, the applicable United States District Court, or the Court of Federal Claims. *See* I.R.C. §§ 6213(a) (first sentence), 6226(a).

of tax at the partner level is suspended – but only in respect of tax that is attributable to the disputed partnership items (or affected items) – until one year after the date on which the decision of the court becomes final. I.R.C. § 6229(d); *see Rhone-Poulenc Surfactants and Specialties, L.P. v. Commissioner*, 114 T.C. 533, 554 (2000), *appeal dismissed as premature*, 249 F.3d 175 (3d Cir. 2001); *see also Curr-Spec Partners, L.P. v. Commissioner*, 579 F.3d 391, 398 n.38 (5th Cir. 2009).

Under the foregoing framework, if the IRS wishes to preserve its ability to timely assess partner deficiencies in tax resulting from a TEFRA partnership audit, it must issue an FPAA prior to the expiration of the respective periods of limitation on assessment applicable to the partners. Insofar as such TEFRA-related deficiencies are concerned, this limitations period would not in any event expire any sooner than 3 years after the filing (or the due date, if later) of the partnership return.[10] Alternatively, the IRS may, prior to the

---

[10] In the case of the *AB* partnership example on pp. 19-20, *supra*, the issuance of an FPAA with respect to *AB*'s 2010 tax year on June 10, 2014 would preserve the IRS's ability to timely assess any resulting deficiency in *A*'s or *B*'s tax. In contrast, the issuance of such an FPAA on October 10, 2014 would preserve the IRS's ability to timely assess any resulting deficiency in *B*'s tax, but the assessment of any resulting deficiency in *A*'s tax would be time-barred.

expiration of such periods, obtain the partners' consents (or the partnership's consent on behalf of the partners) to extend their respective periods as applicable to any deficiency resulting from the TEFRA audit, and then issue an FPAA prior to the expiration of the extended periods.  I.R.C. § 6229(b)(1), (3).

## II. The extension agreements, coupled with the issuance of the 2000-A FPAA, preserved the IRS's ability to make timely assessments of the deficiencies

Based on the foregoing, it is apparent that the efficacy of the extension agreements, in terms of preserving the IRS's ability to assess the deficiencies, turns on two inquiries:  (1) whether those deficiencies are "attributable to partnership flow-through items of First Ship LLC," as required by the extension agreements, such that the agreements operated to extend the period for assessing those deficiencies, and, if so, (2) whether the issuance of the 2000-A FPAA had the effect of suspending that period (as so extended) during the ensuing judicial proceedings (and for one year thereafter) pursuant to I.R.C. § 6229(d). As demonstrated below, the answer to each of these questions is yes.[11]

_____

[11] Taxpayers do not dispute that, if the extension agreements operated to extend the period for assessing the deficiencies (question 1), the issuance of the 2000-A FPAA had the effect of further suspending

(continued...)

**A.** **Because the deficiencies are "attributable to partnership flow-through items of First Ship," the period for assessing the deficiencies was extended by the extension agreements**

      **1.** **The term "partnership flow-through items of First Ship" simply refers to partnership items of First Ship that flow through to its partners**

As indicated above, the extension agreements provide that "[t]he amount of any deficiency assessment is to be limited to that resulting from any adjustment directly or indirectly (through one or more intermediate entities) attributable to partnership flow-through items of First Ship LLC." (ER141.) Before turning to the term "partnership flow-through items," it should be emphasized that the word "adjustment" in the language quoted above refers to adjustments to the returns of the First Ship partners. Thus, the agreements limit the deficiencies that may be assessed against the First Ship partners

---

[11] (...continued)
that period (question 2). *See* Br. 1 (expressing the issue in terms of whether the extension agreements held open the relevant period of assessment), 5 ("[t]he sole issue on appeal is the scope of the agreements to extend the assessment period of limitations"), 40 (asserting that "[t]he period of time in which the IRS could assess additional tax arising from the adjustments set forth in the [2000-A FPAA] expired *prior to issuance of that FPAA*.") (emphasis added). Indeed, taxpayers do not even cite I.R.C. § 6229(d), the provision that operates to further suspend the period of limitations on assessment. We nevertheless briefly address this issue in Part II.B., *infra*.

-24-

during the extended period of limitations to those deficiencies resulting from adjustments to the partners' returns that are directly or indirectly attributable to partnership flow-through items of First Ship.[12]  In short, the extension agreements are limited to assessments of deficiencies that are attributable to partnership flow-through items of First Ship.[13]

Unlike the term "partnership item," the term "partnership flow-through item" is not defined in the TEFRA statutory provisions or in the regulations thereunder.  As used in the contemporaneous Internal Revenue Manual provisions relating to extension agreements, however, the term appears to be a regime-neutral reference – that is, applicable

---

[12] The District Court, using the words "assessments" and "adjustments" interchangeably, imprecisely construed the restrictive language as applying to the *adjustments to partnership items* contained in the 2000-A FPAA rather than to the *assessments of tax* attributable to partnership flow-through items of First Ship.  *See* ER89 (referring to "the proposed *assessments* in the FPAA") (emphasis added).  Thus, while we agree with the result reached by the court on the limitations issue, we disagree with the court's framing the issue (*id.*) in terms of whether the *adjustments in the 2000-A FPAA* are attributable to partnership flow-through items of First Ship.  The relevant inquiry is whether the *adjustments to the returns of the First Ship partners resulting in the deficiencies* are attributable to partnership flow-through items of First Ship.

[13] We do not understand taxpayers to contend otherwise.  *See* Br. 1 (describing the extension agreements as "holding open the time period during which the Internal Revenue Service ('IRS') can assess tax attributable to 'partnership flow-through items' of an upper-tier partnership named in the agreements").

to TEFRA and non-TEFRA partnerships alike – to the items of a partnership that flow through to its partners.  *See* I.R.M. § 25.6.22.8.15, examples (5), (6), (7) (Aug. 1, 2003) (reproduced at pages 20-22 of the addendum to taxpayers' opening brief).[14]  Given First Ship's status as a TEFRA partnership, as well as the TEFRA-related references elsewhere in the extension agreements, the term "partnership flow-through items of First Ship" in the agreements necessarily refers to partnership items of First Ship that flow through to its partners, such as partnership income, gain, loss, deduction, or credit.  *See* Treas. Reg. § 301.6231(a)(3)-1(a)(1)(i); *see also Tigers Eye Trading, LLC v. Commissioner*, 138 T.C. No. 6, 2012 WL 445944, at *47 (Feb. 13, 2012) (referring to a TEFRA-related deficiency as being "attributable to adjustment[s] of partnership flow-through items of (a) Loss and (b) Other Deductions").  Accordingly, if the deficiencies are attributable to partnership items of First Ship that flowed through to its partners, they are covered by the extension agreements.

---

[14] The provisions of the Internal Revenue Manual relied upon by taxpayers (Br. 17-18) in support of their assertion that the IRS "disavow[ed] its own guidelines" regarding partnership-related extension agreements, *id*. at 17 n.15, are inapposite.  They clearly do not address tiered-partnership arrangements such as the one present here.

### 2. The deficiencies are attributable to partnership items of First Ship that flowed through to its partners

The deficiencies are attributable to the elimination of the following losses and deductions, resulting from the determination in the 2000-A FPAA that the Son-of-BOSS transaction engaged in by First Ship and 2000-A must be disregarded for tax purposes: (1) the $318,018,377 short-term capital loss that First Ship claimed on the liquidation of its interest in 2000-A, (2) a $4,067,455 net short-term capital loss that First Ship claimed as its share of a $5,376,293 net short-term capital loss claimed by 2000-A, and (3) a $77,095 deduction First Ship claimed as its share of a $100,082 "portfolio" deduction claimed by 2000-A. (ER168, 170, 277-80.) Because these capital losses and deductions that First Ship claimed – and passed through to its partners – are "[i]tems of income, gain, loss, deduction, or credit" of First Ship, Treas. Reg. § 301.6231(a)(3)-1(a)(1)(i), they are, by definition, partnership items of First Ship that flowed through to its partners. Thus, the deficiencies are attributable to partnership items of First Ship that flowed through to its partners and, as such, are encompassed by the extension agreements.

The closest taxpayers come to questioning whether the deficiencies are attributable to partnership items of First Ship, as required by the extension agreements, is their erroneous assertion (Br. 39) that "the fact that partnership items of the lower-tier partnership might 'flow through' the upper-tier partnership does not make them 'partnership items' of that named [upper-tier] partnership."[15]  If that were true, then First Ship's shares of 2000-A partnership items would not be partnership items of First Ship, and the portion of the deficiencies attributable to such items therefore would not be attributable to partnership items of First Ship.  Even if taxpayers' assertion were correct (which it is not), it would be largely irrelevant to this case, as the $318 million loss claimed by First Ship on the liquidation of its interest in 2000-A – the elimination of which accounts for almost the entire amount of the deficiencies – clearly is not a share of a loss claimed by 2000-A.

In any event, contrary to taxpayers' assertion, an upper-tier partnership's shares of the partnership items of a lower-tier

---

[15] Taxpayers erroneously attribute this proposition to *Russian Recovery Fund Ltd. v. United States*, 101 Fed. Cl. 498 (2011).  *Russian Recovery Fund* is discussed in Part II.A.3.c., *infra* pp. 36-40.

partnership *are* partnership items of the upper-tier partnership.  Under I.R.C. § 6231(a)(3),

> [t]he term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle [subtitle F], such item is more appropriately determined at the partnership level than at the partner level.

Treas. Reg. § 301.6231(a)(3)-1(a) then provides that, for purposes of subtitle F, "items which are required to be taken into account for the taxable year of a partnership under subtitle A of the Code [that] are more appropriately determined at the partnership level than at the partner level and, therefore, are partnership items" include, as indicated above, "[i]tems of income, gain, loss, deduction, or credit of the partnership."  Treas. Reg. § 301.6231(a)(3)-1(a)(1)(i).  Taxpayers do not, because they cannot, point to anything in the TEFRA statutory provisions or the regulations thereunder even remotely suggesting that the items of income, gain, loss, deduction, or credit of a partnership do not include its share of such items of other partnerships in which it holds an interest.  *Cf.* I.R.C. §§ 702(c) (providing that a partner's gross income includes the partner's share of the gross income of the partnership), 6231(b) (listing circumstances in which a partnership

item will be treated as a nonpartnership item); *Ginsburg v.*

*Commissioner*, 127 T.C. 75, 80 (2006) (upper-tier TEFRA partnership's

share of foreign – and therefore non-TEFRA – partnership's loss is a

partnership item at the upper-tier level).[16]

### 3. Taxpayers' arguments in support of their claim that the extension agreements do not apply to the deficiencies are meritless

### a. Taxpayers' initial premise, that the extension agreements apply to adjustments to partnership items rather than assessments of tax, is incorrect

Instead of focusing on whether the deficiencies are attributable to

partnership items of First Ship that flowed through to its partners, as

required by the extension agreements, taxpayers repeatedly assert *(see,*

*e.g.*, Br. 18-22, 25-26, 28-29) that, because those agreements refer to

partnership flow-through items of First Ship, they do not cover

adjustments to partnership items of 2000-A.  This argument completely

misapprehends the scope of the extension agreements.  The agreements

---

[16] That an *adjustment to* an upper-tier partnership item to reflect the result of a lower-tier partnership proceeding is, pursuant to I.R.C. § 6231(a)(6), treated as a "computational adjustment" – a term that, confusingly, includes adjustments requiring substantive (*i.e.*, non-computational) partner-level determinations, *see* I.R.C. § 6230(a)(1), (a)(2)(A)(i) – does not make the adjusted upper-tier item any less of a partnership item.

cover assessments of tax, not adjustments to partnership items. More specifically, they cover assessments of deficiencies in tax that are attributable to partnership flow-through items of First Ship, without regard to the source of any adjustments to those items. In other words, the fact that the relevant partnership flow-through items of First Ship reflect adjustments to partnership items of 2000-A does not make the deficiencies any less attributable to those partnership flow-through items of First Ship. That is the sole criterion set forth in the restrictive language of the extension agreements for identifying the deficiencies in tax that are covered by those agreements.

Taxpayers' mistaken focus is evident in their textual analysis of the extension agreements. According to taxpayers, because (1) the general language of the Form 872-I allegedly covers adjustments to partnership items of all partnerships, and (2) the restrictive language narrows the agreement to partnership items of a named partnership (First Ship), it follows that, in effect, the principle of *expressio unius est exclusio alterius* ("the express mention of one thing excludes all others") operates to exclude partnership items of 2000-A. *See* Br. 21-22. Taxpayers are wrong.

The general language of the Form 872-I does not, as taxpayers erroneously assert, "extend to the *adjustment of* 'partnership items' of all partnerships in which each individual partner has an interest."  Br. 21 (emphasis added).  Rather, that language "extends the period of limitations for assessing any tax … *attributable to* any partnership items."  (ER140 [emphasis added].)  Inasmuch as the word "adjust" connotes an item-specific act, an *adjustment to* a First Ship partnership item cannot also be an *adjustment to* a 2000-A partnership item.  In contrast, tax *attributable to* a First Ship partnership item can also be *attributable to* a 2000-A partnership item.  *See Russian Recovery Fund Ltd. v. United States*, 101 Fed. Cl. 498, 505-09 (2011) (rejecting taxpayer's argument that deficiency in indirect partner's tax could not be "attributable to" lower-tier partnership items if it was "attributable to" upper-tier partnership items); *cf. Ginsburg*, 127 T.C. at 87-88 (citing *Maxwell v. Commissioner*, 87 T.C. 783, 791 n.6 (1986), for the proposition that a "deficiency attributable to an affected item … is also a 'deficiency attributable to a partnership item'").  Accordingly, the narrowing of the scope of the extension agreements from tax "attributable to any partnership items" to tax "attributable to partnership flow-through items of First Ship LLC" does not lend itself

-32-

to the *expressio unius est exclusio alterius* principle that might apply if the agreements applied to adjustments to partnership items rather than to assessments of tax.

### b. Taxpayers' critique of the District Court's reliance on *Brody* is unavailing

As indicated above, the District Court found support for its summary judgment holding in *Brody v. Commissioner*, 55 T.C.M. (CCH) 808 (1988). Although *Brody* is a pre-TEFRA case, and therefore did not involve the statutory definition of "partnership item," it is instructive nonetheless. Like taxpayers, the Brodys were indirect partners in a lower-tier partnership (Thunderbird) through an upper-tier partnership (BDB). In 1978, Thunderbird reported a $953,129 loss, BDB reported its 34-percent share of that loss ($324,964), and the Brodys reported their 9-percent share of BDB's share ($31,255). When the IRS audited the Brodys, they agreed to extend the period of limitations on assessment for 1978 by executing an agreement that was limited, in relevant part, to deficiencies resulting from adjustments to the items of "an entity(ies) known as: [Thunderbird]." *Id.* at 809. In response to a notice of deficiency reducing their reported loss from BDB, the Brodys filed a Tax Court petition claiming that assessment of

the resulting deficiency was time-barred. Specifically, they argued that the extension agreement covered only adjustments to the items of the entity named therein (Thunderbird) and, therefore, did not cover the corresponding adjustment to BDB's loss that resulted in the asserted deficiency.

In rejecting the Brodys' argument, the Tax Court reasoned that the IRS was not concerned with any items of BDB "other than its share of the net loss reported by Thunderbird," and that "had the consent specifically named BDB, as petitioners claim is necessary," it would have covered deficiencies resulting from "any partnership item flowing from BDB into petitioners' return, not just partnership items from Thunderbird." 55 T.C.M. at 812, 813. Accordingly, although the parties certainly *could have* named BDB in the extension agreement, "there is no reason to require them to have done so." *Id*. at 813.

The same reasoning applies here. In soliciting the extension agreements, the IRS was not concerned with the effect that any adjustments to 2000-A partnership items would have on any partner of 2000-A other than First Ship, the partner that engaged in the Son-of-BOSS transaction with 2000-A. Had the extension agreements specifically named 2000-A, as taxpayers claim is necessary, they would

-34-

have covered not only deficiencies attributable to the Trusts' interests in 2000-A held through First Ship, but also those attributable to their interests in 2000-A held through the other partners of 2000-A (Fourth Ship and LMGA).[17]  As was the case in *Brody*, the parties here certainly *could have* named 2000-A in the extension agreements, but "there is no reason to require them to have done so."  55 T.C.M. at 813.

Taxpayers' insistence that the District Court misread *Brody* and that the case actually supports their position (Br. 32-34) rings hollow. According to taxpayers (*id*. at 32), *Brody* stands for the proposition that "an agreement to extend the assessment limitations period for adjustments arising from a specific entity must, at a minimum, reference that entity."  But *Brody* says nothing of the sort.  Rather, *Brody* stands for the proposition that, where an extension agreement applies to a deficiency arising in the context of a tiered-partnership arrangement, and the agreement provides that the deficiency must be

_____

[17] *See* note 5, *supra* p. 7.  The reason the extension agreements do not cover these other deficiencies – those attributable to the Trusts' interests in 2000-A held through Fourth Ship and LMGA – is not, as taxpayers claim (Br. 31-32), because "the plain language of those agreements simply does not cover 'partnership items' of the lower-tier 2000-A Partnership."  Rather, it is because the plain language of the agreements limits the extension to deficiencies that are "attributable to partnership flow-through items of First Ship LLC."  (ER141.)

-35-

attributable to items of one of the partnerships, it does not thereby exclude deficiencies that, by reason of the tiered arrangement, also are attributable to items of the other, unnamed, partnership. As applied to the instant case, the fact that the extension agreements here are limited to deficiencies that are "attributable to partnership flow-through items of First Ship" does not mean that they exclude deficiencies that are attributable to First Ship partnership items that in turn derive from 2000-A partnership items. Just as the agreement in *Brody* "d[id] not state, as it easily could have, that adjustments to petitioners' share of partnership items from BDB are not covered," 55 T.C.M. at 813, the agreements here do not state, as they easily could have, that they apply to deficiencies that are attributable to First Ship partnership items that do not derive from 2000-A partnership items.

### c.  Taxpayers' reliance on *Russian Recovery Fund* is misplaced, since the case is distinguishable and in any event was wrongly decided on this point

In *Russian Recovery Fund Ltd. v. United States*, 101 Fed. Cl. 498, 509-10 (2011), the Court of Federal Claims briefly addressed the application of an extension agreement in the context of a tiered-

-36-

partnership arrangement.[18]  The extension agreement at issue was executed by an upper-tier partnership (*i.e.*, on behalf of its partners), and extended the period during which the IRS could "assess any federal income tax attributable to the partnership items of the partnership named above," *viz.*, the upper-tier partnership (FFIP).  *Id.* at 501.  Prior to the expiration of the period described in the extension agreement, the IRS issued an FPAA pertaining to the lower-tier partnership (RRF), disallowing losses claimed by RRF.  Those losses had flowed through to RRF's partners, including FFIP, and FFIP's share of the losses had in turn flowed through to its ultimate partners, including a Mr. DiBiase. Reasoning that "[t]he effect of the agreement is limited to extending the assessment period for FFIP partnership items, qua FFIP partnership items," the court held, on cross-motions for summary judgment, that the extension agreement did not operate to extend the period for

---

[18] Most of the opinion of the Court of Federal Claims is devoted to its determination that the IRS could assess the 2001 deficiency of an indirect partner, Zimmerman, resulting from adjustments contained in an FPAA pertaining to the lower-tier partnership's 2000 tax year that was issued less than 3 years after Zimmerman filed her 2001 return (*i.e.*, where the IRS did not have to rely on the extension agreement entered into by the upper-tier partnership).

assessing the deficiency in DiBiase's tax resulting from the adjustments in the FPAA issued to RRF.  *Id.* at 510.

It is not clear what the court in *Russian Recovery Fund* meant in stating that the extension agreement was limited to "FFIP partnership items, qua FFIP partnership items."  If, consistent with the facts of that case, the court meant that the agreement did not cover FFIP partnership items that were simply FFIP's share of the partnership items of a lower-tier partnership (RRF), then this aspect of *Russian Recovery Fund* is largely irrelevant here; as indicated above, the $318 million loss claimed by First Ship on the liquidation of its interest in 2000-A clearly is not a share of a loss claimed by 2000-A.  But even if the court's comment were read as suggesting that the extension agreement also would exclude FFIP partnership items that were merely affected by RRF partnership items (*i.e.*, the equivalent of First Ship's $318 million liquidation loss), this aspect of *Russian Recovery Fund* was wrongly decided, and taxpayers' reliance on it is misplaced.

At the outset, the court in *Russian Recovery Fund* did not, as taxpayers erroneously suggest (Br. 39), hold that FFIP's share of

RRF's disallowed losses was not a partnership item of FFIP.[19]  *See* 101 Fed. Cl. at 509 (stating outside the context of the extension issue that "[i]t does not matter if the disallowed losses are also FFIP partnership items").  Rather, the court held that FFIP's share of RRF's disallowed losses was not a partnership item of FFIP *as contemplated in the extension agreement.  See id.* at 510 (declining to address the Government's argument that FFIP's share of the disallowed losses was a partnership item of FFIP, "because we disagree with [the Government's] application of the consent agreement").  The distinction is significant because, in finding that the reference to FFIP partnership items in the agreement means "FFIP partnership items qua FFIP partnership items" – a subset of FFIP partnership items that evidently does not include FFIP partnership items representing FFIP's share of RRF partnership items – the court violated a cardinal rule of contract construction:  in taxpayers' words (Br. 24), "the use of a legal term of art in a contract is presumed to carry with it the accepted definition of that term."

---

[19] As discussed *supra* at pp. 28-30, any such holding would be unsupportable in any event.

The term "partnership item" is clearly a legal term of art. Its accepted definition is set forth in I.R.C. § 6231(a)(3) and is explicated in detail in Treas. Reg. § 301.6231(a)(3)-1. As indicated *supra* at pp. 29-30, nothing in the statute or regulations remotely suggests that the term "partnership item" is limited to items that originate with the partnership in question. But that is precisely the meaning the court in *Russian Recovery Fund* assigned to the term "partnership item" as used in the extension agreement at issue there. The court erred as a matter of law in doing so, as taxpayers' own brief exhaustively demonstrates. *See* Br. 22-29 (arguing, correctly, that, in construing the extension agreements, the term "partnership flow-through item" must be interpreted in accordance with the well-defined legal meaning of the term "partnership item"); *see also supra* p. 26.

### 4.    Summary

The extension agreements are limited to deficiencies that are "attributable to partnership flow-through items of First Ship." (ER141.) The deficiencies at issue here are attributable to the elimination, as a consequence of the determinations in the 2000-A FPAA, of losses and deductions claimed by First Ship, most significantly the $318 million loss it claimed on the liquidation of its

interest in 2000-A.  Those losses and deductions are indisputably partnership items of First Ship that flowed through to its partners. Accordingly, the period for assessing the deficiencies was extended as provided in the extension agreements.

### B.    The issuance of the 2000-A FPAA suspended the period of limitations on assessment held open by the extension agreements

The agreements' extending the period during which the IRS could assess the deficiencies would be inconsequential if the issuance of the 2000-A FPAA did not further suspend that period pursuant to I.R.C. § 6229(d).  Although taxpayers do not address this ancillary issue, *see* note 11, *supra* p. 23, we briefly address it here for the sake of completeness.[20]

### 1.    Operation of I.R.C. § 6229(d)

As indicated *supra* in Part I.B.2, the issuance of an FPAA suspends the running of any open period of limitation on assessment of tax at the partner level – but only in respect of tax that is attributable to the disputed partnership items (or affected items) – until one year

---

[20] By failing to raise the issue in their opening brief, taxpayers have waived it.  *See, e.g., Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (citing *Eberle v Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990)).

after the decision of the court in any ensuing judicial proceeding becomes final (or, if no judicial proceeding is initiated, until one year after the deadline for initiating such a judicial proceeding). *See* I.R.C. § 6229(d); *Rhone-Poulenc*, 114 T.C. at 554; *see also Curr-Spec Partners*, 579 F.3d at 398 n.38. Specifically, I.R.C. § 6229(d) provides that if an FPAA "with respect to any taxable year is mailed to the tax matters partner, the running of the period specified in subsection (a) (as modified by other provisions of this section) shall be suspended" for the period described in I.R.C. § 6229(d). The "period specified in subsection (a)" is "the period for assessing any [income] tax … with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year," I.R.C. § 6229(a), which in turn is the period specified in I.R.C. § 6501, as potentially enlarged by I.R.C. § 6229(a). The issuance of the 2000-A FPAA therefore suspended any open period for assessing income tax, but only as to tax that is attributable to any partnership item of 2000-A with respect to its 2000 taxable year (or is attributable to any item that is affected by such a partnership item).

The deficiencies here are almost entirely attributable to a partnership item of First Ship (the $318 million loss it claimed on the

liquidation of its interest in 2000-A) that is affected by a partnership item of 2000-A (the potential $314.8 million payment obligation it assumed with respect to the short option positions contributed to it by First Ship). Specifically, the invalidation of 2000-A's tax treatment of that payment obligation had the effect of eliminating the artificial outside basis claimed by First Ship with respect to its interest in 2000-A, which in turn eliminated the $318 million liquidation loss claimed by 2000-A.[21] The remaining portion of the deficiencies is attributable to First Ship's share of partnership items of 2000-A (the $5.3 million net short-term capital loss and $100,082 "portfolio" deduction claimed by 2000-A). *See Russian Recovery Fund*, 101 Fed. Cl. at 505-09 (deficiency in indirect partner's tax attributable to her share of upper-tier partnership's share of loss claimed by lower-tier partnership was

---

[21] Classifying First Ship's claimed $318 million liquidation loss as an affected item *vis-à-vis* 2000-A – *i.e.*, an item of a partner of 2000-A (First Ship) that is affected by a partnership item of 2000-A – does not make it any less of a partnership item of First Ship. *See* I.R.C. § 6231(a)(5) (defining "affected item" as *any item* that is affected by a partnership item, which would include a partnership item of an upper-tier partnership that is affected by a partnership item of a lower-tier partnership); *Rawls Trading, L.P. v. Commissioner*, 138 T.C. No. 12, 2012 WL 998112, at *11 (Mar. 26, 2012) (referring to items adjusted in a premature upper-tier FPAA – a notice that, by definition, adjusts partnership items – as affected items *vis-à-vis* the lower-tier partnership).

"attributable to" partnership items of lower-tier partnership within the meaning of I.R.C. § 6229(a)). Accordingly, by operation of I.R.C. § 6229(d), the issuance of the 2000-A FPAA suspended the period of limitations on assessment applicable to the deficiencies that was held open by the extension agreements.

The foregoing analysis is not altered by the fact that, whereas the agreements extending the period of limitations on assessment with respect to the deficiencies are phrased in terms of deficiencies attributable to First Ship partnership items, the FPAA that further suspended that period pertained to 2000-A. As long as "the period described in subsection (a)" – *i.e.*, the period in which the IRS could assess tax attributable to any partnership item (or affected item) pertaining to the 2000 tax year of 2000-A – remained open with respect to any subset of such items (and remained open with respect to any subset of the persons whose tax would be affected by such items) for any reason, the issuance of the 2000-A FPAA had the effect of further suspending that period by operation of I.R.C. § 6229(d). In other words, although the *minimum* duration of a partner's I.R.C. § 6501 assessment period that is effectuated by I.R.C. § 6229(a) for tax attributable to a particular partnership's items is keyed to the return of that

-44-

partnership, the *maximum* duration of that period is not partnership-specific.

This principle was established by *Rhone-Poulenc*, the seminal case regarding I.R.C. § 6229. In *Rhone-Poulenc*, the Tax Court held that under I.R.C. § 6229(d), the issuance of an FPAA "suspend[s] the running of any open period of limitations" for assessing tax attributable to that partnership, even though, for partner-specific reasons, the period is open with respect to only some of the partners. 114 T.C. at 554; *accord*, *Curr-Spec Partners*, 579 F.3d at 398-99. Similarly, pursuant to I.R.C. § 6229(d), the issuance of the 2000-A FPAA suspended each Trust's I.R.C. § 6501 period for assessing tax attributable to 2000-A, even though, by reason of extension agreements limited to tax attributable to First Ship partnership items, that period was open only with respect to tax attributable to 2000-A's partnership items that passed through, or affected the items of, First Ship.

## 2. Practical considerations

Practical considerations reinforce the conclusion that I.R.C. § 6229(d) operated to suspend, upon issuance of the 2000-A FPAA, the period of limitations on assessment held open by the extension agreements. It is well established that, in the context of tiered TEFRA

partnerships, the starting point for determining the proper tax treatment of partnership items of the upper-tier partnership that derive from its interest in the lower-tier partnership – the "partnership level" with respect to such items, as it were – is the lower-tier, or "source," TEFRA partnership. *See Sente Inv. Club P'ship v. Commissioner*, 95 T.C. 243, 247-50 (1990); *see also Rawls Trading, L.P. v. Commissioner*, 138 T.C. No. 12, 2012 WL 998112, at *14-15 (Mar. 26, 2012) (reaffirming this aspect of *Sente*). It is equally clear that any resulting adjustments to upper-tier partnership items must await the conclusion of the lower-tier proceeding. *See Rawls Trading*, 2012 WL 998112, at *10-12.

Given this primacy of the lower-tier partnership proceeding, it stands to reason that the issuance of an FPAA to a lower-tier partnership would suspend any open period of limitations for assessing tax attributable to upper-tier items that derive from lower-tier items, regardless of the means used to keep that period open in the first place. Otherwise, the situation could arise where the period for assessing any deficiencies resulting from the tiered arrangement would be running, but the IRS would be prohibited from making the upper-tier adjustments that must precede any such assessments. *Cf. Rawls*

-46-

*Trading*, 2012 WL 998112, at *9-12 (holding that an FPAA issued with respect to an upper-tier partnership prior to the conclusion of the lower-tier proceedings was invalid). The only sensible construction of I.R.C. § 6229(d) is one that precludes such an anomalous result.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court is correct and should be affirmed.

Respectfully submitted,

KATHRYN KENEALLY
   *Assistant Attorney General*

TAMARA W. ASHFORD
   *Deputy Assistant Attorney General*

/s/ Arthur T. Catterall

GILBERT S. ROTHENBERG   (202) 514-3361
JONATHAN S. COHEN   (202) 514-2970
ARTHUR T. CATTERALL   (202) 514-2937
   *Attorneys*
   *Tax Division*
   *Department of Justice*
   *Post Office Box 502*
   *Washington, D.C. 20044*

*Of Counsel:*

MELINDA L. HAAG
*United States Attorney*

TOM MOORE
*Assistant United States Attorney*   APRIL 2012

-47-

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, counsel for the United States respectfully inform the Court that there are no related cases pending before this Court.

# ADDENDUM

## Internal Revenue Code (26 U.S.C.):

### SUBTITLE F – PROCEDURE AND ADMINISTRATION

\*          \*          \*          \*          \*

## CHAPTER 63 – ASSESSMENT

### Subchapter A – In General

**Sec. 6201.  Assessment Authority.**

(a) AUTHORITY OF SECRETARY. – The Secretary is authorized and required to make the … assessments of all taxes … imposed by this title … .  Such authority shall extend to and include the following:

(1) TAXES SHOWN ON RETURN. – The Secretary shall assess all taxes determined by the taxpayer … as to which returns … are made under this title.

\*          \*          \*          \*          \*

(e) DEFICIENCY PROCEEDINGS. – For special rules applicable to deficiencies of income, estate, gift, and certain excise taxes, see subchapter B.

\*          \*          \*          \*          \*

**Sec. 6207.  Cross References.**

\*          \*          \*          \*          \*

(6) For period of limitation on assessment, see chapter 66.

-49-

## Subchapter B – Deficiency Procedures in the Case of Income, Estate, Gift, and Certain Excise Taxes

### Sec. 6211. Definition of a Deficiency.

(a) IN GENERAL. – For purposes of this title in the case of income … taxes imposed by subtitle[ ] A … the term "deficiency" means the amount by which the tax imposed by subtitle A … exceeds …

      (1) …

           (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon …

    *        *        *        *        *

(c) COORDINATION WITH SUBCHAPTERS C AND D. – In determining the amount of any deficiency for purposes of this subchapter, adjustments to partnership items shall be made only as provided in subchapters C and D.

### Sec. 6212. Notice of Deficiency.

(a) IN GENERAL. – If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitle A … , he is authorized to send notice of such deficiency to the taxpayer … .

    *        *        *        *        *

### Sec. 6213. Restrictions Applicable to Deficiencies; Petition to Tax Court.

(a) TIME FOR FILING PETITION AND RESTRICTION ON ASSESSMENT. – Within 90 days … after the notice of deficiency authorized in section 6212 is mailed … , the taxpayer may file a petition with the Tax Court for a redetermination of the

deficiency.  Except as otherwise provided … no assessment of a deficiency in respect of any tax imposed by subtitle A … shall be made … until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day … period … , nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. …

\*        \*        \*        \*        \*

## Subchapter C – Tax Treatment of Partnership Items

## Sec. 6221.  Tax Treatment Determined at Partnership Level.

Except as otherwise provided in this subchapter, the tax treatment of any partnership item . . . shall be determined at the partnership level.

\*        \*        \*        \*        \*

## Sec. 6223.  Notice to Partners of Proceedings.

(a) SECRETARY MUST GIVE PARTNERS NOTICE OF BEGINNING AND COMPLETION OF ADMINISTRATIVE PROCEEDINGS. – The Secretary shall mail to each partner whose name and address is furnished to the Secretary notice of –

\*        \*        \*        \*        \*

(2) the final partnership administrative adjustment resulting from any such proceeding.

\*        \*        \*        \*        \*

## Sec. 6225.  Assessments Made Only After Partnership Level Proceedings Are Complete.

(a) RESTRICTION ON ASSESSMENT AND COLLECTION. – Except as otherwise provided in this subchapter, no assessment of a

-51-

deficiency attributable to any partnership item may be made … before –

> (1) the close of the 150th day after the day on which a notice of a final partnership administrative adjustment was mailed to the tax matters partner, and

> (2) if a proceeding is begun in the Tax Court under section 6226 during such 150-day period, the decision of the court in such proceeding  has become final.

> \*          \*          \*          \*          \*

## Sec. 6226.  Judicial Review of Final Partnership Administrative Adjustments.

(a) PETITION BY TAX MATTERS PARTNER. – Within 90 days after the day on which a notice of a final partnership administrative adjustment is mailed to the tax matters partner, the tax matters partner may file a petition for a readjustment of the partnership items for such taxable year with –

> (1) the Tax Court,

> (2) the district court of the United States for the district in which the partnership's principal place of business is located, or

> (3) the Court of Federal Claims.

(b) PETITION BY PARTNER OTHER THAN TAX MATTERS PARTNER. –

> (1) IN GENERAL. – If the tax matters partner does not file a readjustment petition under subsection (a) with respect to any final partnership administrative adjustment, any notice partner (and any 5-percent group) may, within the 60 days after the close of the 90-day period set forth in subsection (a), file a petition for a readjustment of

partnership items for the taxable year involved with any of the courts described in subsection (a).

\*          \*          \*          \*          \*

(e) JURISDICTIONAL REQUIREMENT FOR BRINGING ACTION IN DISTRICT COURT OR COURT OF FEDERAL CLAIMS. —

(1) IN GENERAL. – A readjustment petition under this section may be filed in a district court fo the United States or the Court of Federal Claims only if the partner filing the petition deposits with the Secretary, on or before the day the petition is filed, the amount by which the tax liability of the partner would be increased if the treatment of partnership items on the partner's return were made consistent with the treatment of partnership items on the partnership return, as adjusted by the final partnership administrative adjustment. … The court may by order provide that the jurisdictional requirements of this paragraph satisfied where there has been a good faith attempt to satisfy such requirements and any shortfall in the amount required to be deposited is timely corrected.

\*          \*          \*          \*          \*

## Sec. 6229.  Period of Limitation for Making Assessments.

(a) GENERAL RULE. – Except as otherwise provided in this section, the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of–

(1) the date on which the partnership return for such taxable year was filed, or

(2) the last day for filing such return for such year (determined without regard to extensions).

-53-

(b) EXTENSION BY AGREEMENT. –

(1) IN GENERAL. – The period described in subsection (a) (including an extension period under this subsection) may be extended –

(A) with respect to any partner, by an agreement entered into by the Secretary and such partner, and

(B) with respect to all partners, by an agreement entered into by the Secretary and the tax matters partner (or any other person authorized by the partnership in writing to enter into such an agreement),

before the expiration of such period.

\*      \*      \*      \*      \*

(3) COORDINATION WITH SECTION 6501(c)(4). – Any agreement under section 6501(c)(4) shall apply with respect to the period described in subsection (a) only if the agreement expressly provides that such agreement applies to tax attributable to partnership items.

\*      \*      \*      \*      \*

(d) SUSPENSION WHEN SECRETARY MAKES ADMINISTRATIVE ADJUSTMENT. – If notice of a final partnership administrative adjustment with respect to any taxable year is mailed to the tax matters partner, the running of the period specified in subsection (a) (as modified by other provisions of this section) shall be suspended –

(1) for the period during which an action may be brought under section 6226 (and, if a petition is filed under section 6226 with respect to such administrative adjustment, until the decision of the court becomes final), and

-54-

(2) for 1 year thereafter.

\*          \*          \*          \*          \*

## Sec. 6231.  Definitions and Special Rules.

(a) DEFINITIONS. – For purposes of this subchapter –

\*          \*          \*          \*          \*

(3) PARTNERSHIP ITEM. – The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

\*          \*          \*          \*          \*

(5) AFFECTED ITEM. – The term "affected item" means any item to the extent such item is affected by a partnership item.

\*          \*          \*          \*          \*

## CHAPTER 66  – LIMITATIONS

## Subchapter A – Limitations on Assessment and Collection

## Sec. 6501.  Limitations on Assessment and Collection.

(a) GENERAL RULE. – Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed … , and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.  For purposes of this chapter, the term "return" means the return

-55-

required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit).

(b) TIME RETURN DEEMED FILED. –

(1) EARLY RETURN. – For purposes of this section, a return of tax imposed by this title … filed before the last day prescribed by law or by regulations promulgated pursuant to law for the filing thereof, shall be considered as filed on such last day.

\*          \*          \*          \*          \*

(c) EXCEPTIONS. –

\*          \*          \*          \*          \*

(4) EXTENSION BY AGREEMENT. –

(A) IN GENERAL. – Where before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title … , both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon.  The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

\*          \*          \*          \*          \*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[X]     this brief contains 9,849 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ]     this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X]     this brief has been prepared in a proportionally spaced typeface using Word Perfect X3 in 14-point Century Schoolbook typeface, or

[ ]     this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

/s/ Arthur T. Catterall
ARTHUR T. CATTERALL
Attorney for Appellee

Dated:  April 26, 2012

-57-

CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2012, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Arthur T. Catterall
ARTHUR T. CATTERALL
Attorney for Appellee